## STATE v. JAMES J. SHELTREY.[1]

January 25, 1907.

Nos. 15,018—(18).

**Criminal Law—Calling Witnesses.**

The state is not required to call all the persons whose names are indorsed upon an indictment as having testified before the grand jury. If not called by the state, the witness may be called by the defendant, and the failure of either party to call the witness may, in the discretion of the court, be commented upon by either counsel before the jury.

**Control of Counsel.**

The conduct of counsel during the trial is subject to the direction of the trial judge, and his discretion in that respect will not be controlled by the appellate court, unless it was manifestly abused to the prejudice of one of the parties to the action.

**New Trial.**

A new trial should not be granted upon the ground of newly-discovered evidence which is merely impeaching.

Appeal by defendant from an order of the district court for St. Louis county, Cant, J., denying a motion for a new trial, after a trial and conviction of grand larceny. Affirmed.

*Baldwin, Baldwin & Dancer,* for appellant.

*Edward T. Young,* Attorney General, and *John M. McClintock,* County Attorney, for the State.

[1] Reported in 110 N. W. 353.

ELLIOTT, J.

The appellant was convicted of the crime of grand larceny, and appealed from an order denying his motion for a new trial. The assignments of error are based upon the alleged insufficiency of the evidence, the misconduct of the county attorney, and the refusal of the court to grant a new trial on the ground of newly-discovered evidence.

The complaining witness, Stasni, testified that on February 21, 1906, he entered the appellant's saloon in company with Cornelius Shea, Cornelius Sullivan, and York Sullivan; that there were about fifteen persons then present in the saloon; that while he was leaning against the bar the appellant came up to him, put his hand in his pocket, and took therefrom the sum of $32.45, and thereafter knocked him down. The testimony of Stasni as to the taking of the money was corroborated by the witness Murphy. It is conceded that the complaining witness, Stasni, testified positively that the larceny was committed, but contended that "the overwhelming weight of the testimony is to the effect that no money was taken from him, and that the most that the defendant did was to slap Stasni twice." The jurors evidently believed the story told by the witnesses for the state. The testimony of the complaining witness was positive, and he evidently made a good impression upon the jury. The testimony of the witness Murphy is not of much importance; but it may be entirely disregarded, and the record yet contain enough to justify a conviction. The claim that Murphy was intoxicated while on the witness stand cannot be very seriously considered in this court. Whatever his condition was, it was apparent to the court and the jury; and it is inconceivable that the court would permit an intoxicated witness to testify, or that, if he did, the jury would attach any importance to his testimony.

1. The name of Con Sullivan appeared upon the indictment as that of a witness who testified before the grand jury. The witness was not called by the state at the trial, and in his address to the jury the county attorney commented upon the fact that the witness had not been called by the defendant. The attorney for the defendant objected to this statement, and asked for a ruling upon his objection, whereupon the court said, "Well, I think that, with the defense having the closing argument, there is nothing here that the court could say as a matter of law he should be prohibited from commenting upon. It is a matter

that can be met entirely." The substance of this statement was that the fact of the failure of the defendant to call the witness was proper matter for comment.

The county attorney was not compelled to call all the witnesses whose names were indorsed on the back of the indictment. State v. Smith, 78 Minn. 362, 81. N. W. 17. All that was ever required at common law was that he should produce them in court, in order that the defendant might, if he wished, examine them as his own witnesses. 1 Archbold, Cr. Pr. & Pl. 583; Roscoe, Cr. Ev. 139. In connection with the claim that the state must produce all the eyewitnesses to the transaction under investigation, it was said in State v. Smith, supra, that the general doctrine of the courts is that, the reason having ceased, the rule has also ceased, and that now the state, like any other party, is permitted to call or to decline to call any particular witness. As a matter of fact there never was any rule of law which required the state to produce all the eyewitnesses, or to call all the witnesses whose names appeared upon the indictment. During the early part of the last century the custom grew up of calling all the witnesses the names of whom the statute required to be indorsed upon the indictment as having testified before the grand jury. This indorsement was required as a matter of fairness, in order to give the accused notice of the witnesses who had appeared against him. Closely connected therewith was the practice of calling all eyewitnesses to the affair under consideration. But the practice was merely a rule of professional behavior, and was never recognized as a rule of law.

The idea that the state must call all witnesses whose names are indorsed upon the indictment and all eyewitnesses was adopted in Michigan, and with limitations in Connecticut, Louisiana, and Texas. See 3 Wigmore, Ev. § 2079, notes 1, 2. As stated above the contrary was held by this court in State v. Smith, supra. One of the reasons commonly given for what may be called the "Michigan rule" is that the failure of the defendant to call the witness will be prejudicial to him, because it may be argued that he has thus failed to prove all that was within his power to prove, and has done so because he dared not call out all the facts. In Wellar v. People, 30 Mich. 16, it is said that there is no fairness in such a practice, and that a prosecuting officer should

not be permitted to resort to it. There is some force in this sugges-
tion, but mere unfairness is not necessarily ground for a reversal.

Under the present practice of our courts there does not seem to be
any particular unfairness involved in the practice which was approved
by the trial court in this case. From the indictment the defendant may
learn the names of all witnesses who were called before the grand
jury. The state is not at that stage of the proceedings in a position to
elect and choose witnesses. It is pursuing an investigation, and must
call the persons who are supposed to know the facts about the matter
under consideration. It is the duty of the county attorney to lay all
the evidence before the grand jury. If a witness proves antagonistic
to the state, because of friendship to the defendant or for any other
reason, it is not the duty of the county attorney to call that witness at
the trial. He may have reason to doubt the honesty and good faith of
the witness, and may believe that he has motives for testifying falsely
or for concealing the true facts. The failure of the state to call a wit-
ness whose name is upon the indictment may create the impression up-
on the mind of the jurors that the testimony, had it been produced,
would have been unfavorable to the state; and the defendant's counsel
may properly comment upon this inference in his closing address to
the jury. It is true that the state has the advantage of knowing what
the testimony of the witness before the grand jury was; but this ren-
ders more effective the argument which may be advanced by the de-
fendant. It is rather a deadly weapon for use against the state, and
it is equally blighting whether the witness testified in favor of the de-
fendant honestly or dishonestly.

It is within the bounds of possibility that a witness may modify his
views as to the facts between the time of the hearing before the grand
jury and the trial, and the knowledge or suspicion of this fact may ren-
der the county attorney unwilling to risk calling him to the stand. If
the defendant knows that the witness is friendly to him, he will natural-
ly call him. If he merely suspects it, from the failure of the state to
use the witness, he may take his chances; and, if he proves hostile, no
very serious harm will result. Under our practice he may ask leading
questions if the witness proves hostile, and within proper limits he may
impeach a witness called by himself. The mere fact that the witness
was called before the grand jury by the state and then not used at the

trial will ordinarily prevent the jury from attaching any undue weight to evidence given in favor of the state under such circumstances. It must be conceded that, if the state fails to call a witness whose name is upon the indictment, the defendant may comment upon the fact, and the jury may draw inferences therefrom unfavorable to the state. When the defendant, after learning that the state will not call the witness, does not avail himself of his right to use the witness, there is no legal reason why the facts should not be the subject of comment.

It may possibly be somewhat unfair; but mere unfairness and want of generous consideration for the defendant cannot be treated as reversible error, unless it is carried to such an extent as to amount to prejudicial misconduct by counsel. We do not commend the practice, but we do not think that it constituted such serious misconduct on the part of counsel as to justify this court in interfering with the control of the trial court over the proceedings.

2. The witness Stasni testified in the municipal court on the preliminary hearing and also at the trial. It was not shown how he testified in the municipal court; but in his address to the jury the county attorney remarked that the witness' testimony at the trial was practically the same as that given in the municipal court, and that, if he had "testified differently in the municipal court from what he did here, you would have heard from him." Error is also assigned upon the remark of the county attorney, upon being interrupted by the attorney for the defense for the purpose of objecting to certain statements, that "the attorney for the other side wants to have two chances at the argument." More or less conflict between counsel seems to be inevitable in the trial of strongly contested cases, and remarks and statements are often made which are uncalled for and improper. The duty of seeing that the proprieties are observed and that the rights of parties are not prejudiced rests upon the trial court, and the appellate court will interfere only when there has been a manifest abuse of discretion to the prejudice of some substantial right of a party. We cannot see that the defendant was prejudiced in the slightest degree by these proceedings.

3. The alleged newly-discovered evidence consists of affidavits of several persons as to admissions made by the witness Murphy, subsequent to the trial, to the effect that he was not present in the appellant's saloon at the time of the alleged larceny, and that he had testified against the

appellant out of malice, and an affidavit to the effect that at the time of the trouble Murphy was asleep on the floor of another saloon. As already suggested, there is ample evidence to sustain the verdict if the entire testimony of Murphy was stricken out. What is offered as newly-discovered evidence merely tends to impeach the witness. If the affidavits are true, they show that Murphy testified falsely. None of the affiants pretend to know anything about whether the larceny was committed. We think the trial court properly exercised its discretion in refusing to grant a new trial on the ground of newly-discovered evidence. Bunker v. United Order of Foresters, 97 Minn. 361, 107 N. W. 392, and cases there cited.

The instructions given to the jury contain no material error. The order denying a new trial is therefore affirmed.