## STATE v. WILLIAM ROBERT HEFFELFINGER.[1]

June 18, 1937.

No. 31,089.

[1]Reported in 274 N. W. 234.

See 197 Minn. 173, 266 N. W. 751.

*A. M. Cary* and *Mark J. McCabe,* for appellant.

*William S. Ervin,* Attorney General, *Roy C. Frank,* Assistant Attorney General, *M. F. Kinkead,* County Attorney, and *Andrew R. Bratter,* Assistant County Attorney, for the State.

JULIUS J. OLSON, JUSTICE.

Defendant was convicted of grand larceny in the first degree and sentenced to a term of imprisonment. He appeals, assigning three reasons why there should be reversal: (1) That "the indictment does not state facts sufficient to constitute the crime charged"; (2) that "the evidence is not sufficient to prove the guilt of defendant beyond a reasonable doubt"; and (3) "because of the improper and prejudicial nature of the closing argument of the county attorney."

The sufficiency of the indictment upon which he was tried was determined by this court in State v. Heffelfinger, 197 Minn. 173, 266 N. W. 751. As the attacked instrument was there fully considered and the allegations thereof adequately appear therein, we deem it unnecessary to repeat the facts there alleged. The indictment as amended adequately charges the offense sought to be punished.

The record is voluminous, nearly 600 pages of printed matter. We have carefully scrutinized it and have no hesitancy in saying, as was said by the trial court: "I do not quite see how, under the

evidence in the case, the jury could come to any other conclusion than what they did in this case."

Of course there is conflict in the evidence, as might well be expected in any fraud case whether it be civil or criminal. It is not improper to note, however, that defendant did not testify. His silence at the trial may have its implications. Certain it is his silence then was decidedly at variance with his loquaciousness when he procured $1,500 from the complaining witness for mere blue sky stock given in exchange. But be that as it may, the evidence for the state is not only persuasive but to our minds compelling that by means of false and fraudulent statements and representations he deliberately, intentionally, and feloniously made away with the money of complainant. The corporate enterprise, if such it may be labeled, was of defendant's own making and manipulated by him as smoothly in making sale of its corporate stock as if he were operating a shell or other confidence game. When the stock certificates were issued defendant had already gone a long way in dissolving that corporate enterprise and in creating in its place something new and equally deceptive. The corporation was represented as owning a very valuable lease of iron ore properties on the Isle of Pines, sufficiently distant to lend enchantment and allurement to one wholly unacquainted there. There were represented to be untold millions of tons of ore. Profits would run at least $160 per ton. And it was the highest grade of iron ore paint-pigment, largely used in the United States and theretofore imported from Spain and Persia, bringing 14 cents per pound in our markets. The picture painted by defendant was not only rosy but extravagently enticing. It may well be that one less gullible and trusting than complainant would have refused to believe such fairy tales, but he "fell for it," and, after all, that is the class in greatest need of legal protection. Laws are enacted for the foolish as well as for the wise. That is why those who are "wise" and also wicked get the best of the foolish and confiding. That is exactly what happened here. The vital and all-important question is whether the complainant was in fact defrauded of his money in violation of the statute. The jury upon

adequate evidence determined that he was. We have no hesitancy in approving the verdict on this score.

■  The only point in this case involving any doubt at all relates to the closing argument of the prosecuting attorney. As we have noted, defendant did not choose to testify. Instead he relied upon the testimony of others, evidently hoping thereby to bring about in the jury's mind the much used and often abused issue of "reasonable doubt." It is a most convenient phrase, as "doubt implies some negative evidence," and it "may be content to linger unresolved." Funk & Wagnall's New Standard Dictionary (1931).

A witness for defendant, a practicing lawyer, testified to certain matters diametrically opposed to what the complaining witness claimed. Much in the testimony of this witness, if complainant and other witnesses for the state told the truth, would justify criticism by the prosecuting attorney. The fact that this witness was a lawyer cannot in any way lessen the duty of the prosecution to criticize and otherwise seek to break down his testimony by vigorous argument and severe arraignment. He "is not required to minimize the appearances of culpability or inject doubts of a defendant's guilt. Nor is he forbidden in an argument to state his opinion as to the conclusions or inferences which the human mind may reasonably draw from the evidence." State v. Dunn, 140 Minn. 308, 322, 168 N. W. 2, 8. And in State v. Shepard, 171 Minn. 414, 421, 214 N. W. 280, 283, the court said: "The argument of the county attorney was vigorous, but there was much in the evidence that lent itself to a severe arraignment of the attempted defense." (In fairness to present counsel it should be stated that the lawyer so testifying for defendant is not of counsel in this case.) Important to bear in mind is the fact that the prosecuting attorney attacked only a witness, not defendant.

We think the prosecution would have been much better served if more temperate language had been employed than that used by the prosecuting attorney, but, after all, "whether a new trial shall result because of misconduct is in a large measure discretionary with the trial court. Dunnell, Minn. Dig. and 1916 Supp. § 7102, and cases cited. Upon careful consideration we are brought to the

conclusion that the argument of the county attorney was not of so serious consequence as to require a new trial. The jury is a part of the court in the administration of justice. It is not swayed by every imprudent or wrongful remark of counsel. We must credit it with exercising good judgment. The trial court, in much better position to determine the fact than are we, is of the opinion that the argument of counsel did not influence the jury prejudicially." State v. Hass, 147 Minn. 269, 271, 180 N. W. 94, 95.

To be noted also is the fact that the court exercised the utmost care in instructing the jury on this phase. During the course of the argument, when objections were made, the court promptly checked the prosecutor and by appropriate cautionary language sought to remove all harmful effects.

In counsels' brief as well as at the time of oral argument no suggestion was made that there was error in any ruling of the court nor in the instructions to the jury.

Upon the entire record we are satisfied that defendant was accorded a fair trial and was justly convicted.

Affirmed.

MR. JUSTICE PETERSON, having been attorney general when the appeal in this case was taken, took no part in its consideration or decision.

