## STATE v. JERRY J. INTIHAR.

152 N. W. (2d) 315.

July 14, 1967—No. 39,809.

*Joseph Robbie, Peter Lindberg,* and *Andrew Shea,* for appellant.

*Douglas M. Head,* Attorney General, *Gerard W. Snell,* Acting Solicitor General, and *David J. Byron* and *David C. Weinberg,* Special Assistant Attorneys General, for respondent.

PETERSON, JUSTICE.

Defendant was convicted by a jury in the municipal court of Stillwater, Minnesota, of the offense of speeding and of the offense of assault upon the arresting officer. Defendant appealed those convictions to the district court and, after trial de novo by the court, was again found guilty of both offenses. Defendant appeals from the latter judgment and from the denial of his motion for a new trial.

Defendant's claims are inextricably tied together: (1) As to the offense of speeding, that his guilt was not proved beyond a reasonable doubt because the officer inadequately identified defendant's automobile as the speeding vehicle; and (2) as to the offense of assault, that the arresting officer, by attempting to arrest defendant without a warrant for the misdemeanor of speeding neither committed by him nor committed in the officer's presence, was a mere trespasser and subject to ejection from defendant's private property by the use of reasonable force, although no force was used.

The issues posed by these defensive claims are primarily issues of fact, requiring only a determination of whether the evidence, construed most favorably to the judgment, supports the findings of fact implicit therein. Adding the fact of force used by defendant, moreover, the conviction of speeding almost automatically results in a conviction of assault in this case. We hold that the trial court's findings are fully supported by the evidence and affirm the judgment of conviction as to both offenses.

■ State Highway Patrolman Desmond Pepin observed defendant, Jerry J. Intihar, driving a Rambler automobile at high speed in the early morning hours of July 8, 1964, on State Highway No. 96, from White Bear to Stillwater, Minnesota. Officer Pepin clocked defendant's speed over a quarter-mile distance at more than 60 miles per hour. It is undisputed that the posted speed limit there was 50 miles per hour. Defendant does not dispute that Pepin properly determined that a Rambler vehicle was speeding at that time and place, it being instead his claim that it was a driver other than defendant and a Rambler other than his. The facts show otherwise.

Just as Pepin was about to pull alongside it, the speeding Rambler turned off onto County Road No. 63 in the direction of Woodpile Lake Road, with the officer in pursuit at high speed. Defendant's home is located on Woodpile Lake Road. The police officer's siren and flashing red light were activated, and he flashed his spotlight back and forth across the back of defendant's Rambler automobile, from an interval of two or three car lengths between the vehicles, in an unsuccessful effort to stop him. During the entire course of clocking and pursuing defendant, no other vehicles intervened between Pepin and defendant's Rambler. At the point where defendant turned off onto Woodpile Lake Road, a dirt road, the officer was very close to avoid losing him in the dust, and as defendant turned into his yard, the officer turned in right behind him. On this evidence the court did, as it clearly could, find defendant guilty of speeding.[1] Minn. St. 169.14, subds. 2, 4.

---

[1] Defendant's claim of mistaken identity is based on the fact that Pepin identified the Rambler as gray, whereas it was light beige and, further, that the officer should have noted the license number of the vehicle. The trial court obviously did not consider the slight discrepancy of color in darkness washed by the police spotlight of crucial import under the circumstances, nor do we. Whether the officer noted the license number is not known, for defendant did not inquire; but, if the officer did not, it was not an essential element of proof and a failure to note it while traveling at speeds up to 95 miles per hour would not be an extraordinary omission. Defendant further testified that his Rambler would not travel over 48 miles per hour because of a flooding carburetor, which the court was not required to believe; defendant undertook to corroborate it by nothing more than two bills for carburetor repairs made *one month later*.

■ It is clear, as well, that the public offense of speeding was committed in the presence of the peace officer, so that an arrest without a warrant was fully authorized by the express terms of statute.[2] Entry upon private property to effect a lawful arrest is likewise authorized by statute. § 629.34.

■ The evidence of assault, including questions of testimonial credibility,[3] again considered under the rule that this court on appeal must take the evidence most favorable to the state, supports the judgment. When the highway patrolman pulled up behind defendant's car on defendant's property, he got out of the car and approached the defendant's automobile. At the same time defendant walked back to the officer and told him in loud and profane language to get off his property.[4] Then, without warning, defendant struck the officer with sufficient force to knock him down. The officer got up and told defendant he was under arrest for speeding and for resisting arrest. Defendant refused to get into the patrol car and said to the officer, "You can't arrest me on my own property."

---

[2] We note that in this case the validity of the arrest is fully established by the evidence upon which the conviction was based. This does not mean, of course, that the *conviction* of speeding was essential to the validity of the arrest. The validity of the arrest is based upon *probable cause* that an offense was committed in the officer's presence. While in a misdemeanor case these elements tend to merge, they are not identical, as fully discussed in Smith v. Hubbard, 253 Minn. 215, 221 to 223, 91 N. W. (2d) 756, 762 to 763. See, also, Jones v. United States, 362 U. S. 257, 80 S. Ct. 725, 4 L. ed. (2d) 697.

[3] State v. Thompson, 273 Minn. 1, 139 N. W. (2d) 490; State v. Norgaard, 272 Minn. 48, 136 N. W. (2d) 628; Donovan v. Dixon, 261 Minn. 455, 113 N. W. (2d) 432.

[4] Defendant does not deny that he told the officer to leave but asserts his right to do so, based on the argument, *supra*, that the officer had no right to arrest him and was therefore a trespasser. Defendant testified, moreover, that he used both moderate language and tone of voice "just like I'm talking now [in the court room]"; and defendant's wife so testified, too. A neighbor living 50 to 100 yards away, however, testified that he was aroused from sleep by a siren coming in the direction of his own home from the vicinity of Highway No. 96 and that after the siren stopped he heard somebody in a "quite loud" voice saying "they couldn't arrest him on his property," a woman's voice saying "Jerry, Jerry," and then a shot.

The officer got into the patrol car to radio headquarters for assistance, but was interrupted by being struck two more times on the face by defendant. As the officer pushed the car door open with his foot and against the defendant, he warned the defendant not to strike him again. Defendant grabbed the officer's leg, in an apparent effort to pull him from the patrol car, whereupon the officer drew his service revolver and shot the defendant through the fleshy upper portion of defendant's leg. Shortly thereafter several other police vehicles and an ambulance arrived on the scene, and the arrest was effected.

The offense of assault for which defendant was convicted is the intentional infliction of bodily harm upon another, the attempt to inflict such harm upon another, or the doing of an act with the intent to cause fear in another of immediate bodily harm. § 609.22. Although defendant's main thesis is that he had a right to use force to eject a trespasser, he asserted vigorously that he used no force whatever. Defendant himself acknowledges, however, that he "kept pushing the door shut on the officer to insure that he would not get out" of the patrol car, which might itself suggest "sufficient physical contact to constitute a battery." [5] The assault, of course, was far more violent than that. The testimony of the officer, which the court could and did believe, was that defendant repeatedly struck him on the face with his fist with sufficient force both to cause painful bruises and to knock him down. This testimony was confirmed by the evidence of bruises on the officer's face noted by fellow officers at the scene and identified by a doctor shortly thereafter as being of recent origin.[6] The doctor added, as an item of lay evidence, that he observed deposits of dirt on the back of the officer's shirt and trousers at the time of treatment, rather corroborative of the officer's testimony that he had been in recent contact with the ground at defendant's home.

Affirmed.

---

[5] Smith v. Hubbard, 253 Minn. 215, 225, 91 N. W. (2d) 756, 764; cf. State v. Johnson, 277 Minn. 230, 152 N. W. (2d) 768.

[6] The doctor who treated defendant for the gunshot wound testified that there were no bruises on defendant's hands and that he would expect such bruises to be present if somebody had struck another with his fist. The doctor acknowledged, however, that it was possible for a blow to be made on a victim's face without leaving marks or swelling on the assailant's hands.