## STATE v. EVERETT ALLEN JOHNSON.*

152 N. W. (2d) 768.

July 14, 1967—No. 40,312.

---

* Certified to U. S. Supreme Court December 22, 1967.

*C. Paul Jones,* State Public Defender, and *Robert E. Oliphant,* for appellant.

*Douglas M. Head,* Attorney General, *Gerard W. Snell,* Acting Solicitor General, and *Arvid Wendland,* Special Assistant Attorney General, for respondent.

NELSON, JUSTICE.

Appeal from a judgment of conviction of aggravated robbery in violation of Minn. St. 609.245.

The facts leading up to the filing of the information and the subsequent trial and conviction are as follows: During the early morning of May 13, 1965, at La Crosse, Wisconsin, Oscar F. Winter was confronted by defendant who asked Winter to give him a ride to his truck. Apparently

defendant was a total stranger to Winter, though he allegedly addressed Winter by name. When they reached the spot where the truck was supposed to be, defendant convinced Winter to take him in Winter's car, a 1957 Ford, to La Crescent, Minnesota, and then from there through Hokah, Minnesota.

When the two men reached a spot outside the village of Hokah, defendant told Winter to stop. Defendant took the victim's arm and by pushing or pulling forced him out of the car. As Winter was forced out of the car, he unbuttoned his back trouser pocket and threw his wallet containing $900 under the car. Defendant then went through the victim's front shirt pockets and trouser pockets removing about $1,575 in cash. Winter said that while leaving the car he suffered a bruise on his hip and that after getting out he was hit in the chest, causing his glasses to fall to the ground. After defendant took the money, the victim got back into his car and was forced to ride to a point outside La Crescent, where he was forced to get out. He immediately ran to a nearby home and notified the authorities. This was about 3:30 a. m. Hokah is about 10 miles from La Crosse.

A gas station attendant testified that defendant drove into his station in a 1957 Ford about 3:30 or 4 o'clock that morning. There was also testimony that defendant woke up a farmer friend about 4 a. m. and asked to be taken home. He was given a ride to some stockyards located in Hokah.

About 1 p. m. that afternoon, the Houston County sheriff called on the robbery victim and showed him a photograph of defendant. Winter identified defendant from the photograph as the perpetrator of the crime. At 3:30 that same afternoon a Houston County deputy sheriff went to defendant's home and arrested him on a bad check complaint. At the exact time the deputy was making the arrest, the victim of the robbery was passing by. He stopped and positively identified defendant as the robber.

Defendant was immediately taken before a justice of the peace, pleaded guilty to the check charge, and was sentenced to the Caledonia jail until he talked with his parole officer. Because he was indigent, the Houston County District Court appointed counsel to represent defendant on the

robbery charge May 25, 1965. After a preliminary hearing May 26, at which defendant was represented by his court-appointed attorney, he was bound over to district court.

Defendant was thereafter arraigned on the information on July 23, 1965, pled not guilty, and demanded a jury trial, which began August 3 and terminated August 5, 1965, the jury returning a guilty verdict that day. After a presentence investigation, defendant was sentenced to the custody of the commissioner of corrections until released by competent authority or due process of law.

Legal issues involved on this appeal are: (1) Whether or not the 12-day delay in having the preliminary hearing after defendant's arrest amounted to a denial of due process of law under the circumstances; (2) whether defendant received adequate representation by court-appointed counsel; (3) whether certain statements were admissible as admissions against interest and whether defendant was afforded his constitutional rights with regard to their admission; (4) whether or not the evidence was sufficient to justify a finding that defendant took money from the victim with intent to steal it and in doing so inflicted "bodily harm" upon the victim within the meaning of § 609.245; and (5) whether or not defendant's constitutional rights of freedom from unlawful search and seizure and from self-incrimination and to proper extradition from an asylum state were violated.

■ We do not approve of the delay in holding a preliminary hearing on the robbery charge. However, defendant was not thereby deprived of his liberty since he was serving an indeterminate sentence on the bad check charge. There is no evidence that defendant was denied the right to counsel during this period or was interrogated about the robbery. It does not appear that the delay was prejudicial under the circumstances.

■ Defendant argues that he was denied a fair trial because of the incompetence of his court-appointed counsel. We said in State ex rel. Adams v. Rigg, 252 Minn. 283, 288, 89 N. W. (2d) 898, 903, certiorari denied, 358 U. S. 899, 79 S. Ct. 224, 3 L. ed. (2d) 149:

"* * * [A] defendant should not be permitted to urge the ignorance or incompetence of, or mismanagement by, his attorney as a ground

for a new trial, even in a criminal case, *unless there be a strong showing of both incompetence and prejudice.*" (Italics supplied in part.)

Other cases supporting the rule announced in State ex rel. Adams v. Rigg, *supra*, are State v. Waldron, 273 Minn. 57, 139 N. W. (2d) 785, and Rivera v. United States (9 Cir.) 318 F. (2d) 606.

The sheriff's wife testified that on May 25 defendant told her that he wanted to tell the sheriff where the money was located. She called her husband, who was away from the jail, and upon his return he and defendant and a trusted inmate went to a spot behind defendant's home where $370 in cash, wrapped in swimming trunks, was uncovered. A witness who had been in the jail from May 13 to June 22 testified that defendant told him he had $1,100 buried in a plastic bag in a glass jar. The record does not establish the exact date this conversation took place.

Defendant's home was searched without a warrant May 14 and May 15, and nothing was discovered as a result of the search. His mother, however, volunteered $90, explaining to the sheriff that she had found it in defendant's sport coat. Another $149 was turned in to the sheriff in July by a man who said some children had found it within a few blocks of defendant's house. During the trial, all the money was received into evidence and the sheriff testified as to conversations concerning it without objection by defendant's counsel.

One witness was called by the state to show that defendant had been in her store and did not have any money to make a purchase on the day prior to the robbery. The same witness was recalled by the defense, at which time she said she could not be certain the person she had earlier identified as defendant was in her store because during the week of May 25 she saw a person identical to defendant in a bar and cafe in Hokah.

Defendant urges that the failure of his attorney to object to the testimony concerning his statements and the sheriff's conversations with defendant's mother and the man who returned the $149 demonstrates the inadequacy of the representation his attorney accorded him.

However, in this case, defendant's counsel may well have decided it best to admit without objection the testimony concerning $149 found near defendant's home. This evidence was circumstantial and the prosecution did not connect defendant with the money. Similarly, the sheriff's

testimony regarding the $90 received from defendant's mother was purely circumstantial and never connected with defendant. This testimony, if believed by the jury, would go to show that defendant had money after the date of the robbery, while he apparently had none before. The state suggests that there was ample proof of this fact without the hearsay testimony of the sheriff to which defendant's counsel did not object. There was, for example, the testimony to the effect that shortly after the time of the robbery defendant bought $4 worth of gas, paying cash, and paid $10 in cash to redeem a bad check at the witness' gas station. There was the testimony of the sheriff to the effect that defendant himself led the sheriff and another witness to the spot behind defendant's home where $370 was recovered. Thus, it would appear that the testimony of the sheriff added little that was not proved by other competent evidence and was therefore not prejudicial to defendant's case. Defendant in attacking the competence of his counsel in these instances is actually attempting to circumvent the rule laid down in State v. Taylor, 270 Minn. 333, 133 N. W. (2d) 828, that the admissibility of evidence cannot be questioned for the first time on appeal. In any event, it is clear that the testimony involving the monies returned comes within the verbal-act exception to the hearsay rule, since we have the acts (handing over the money) and the statements which explain the acts in question. See, State v. Sweeney, 180 Minn. 450, 231 N. W. 225, 73 A. L. R. 380.

Defendant also criticizes defense counsel's failure to object to what he calls inflammatory language of the prosecuting attorney during his closing argument. Whether or not the statements made during the final argument are so prejudicial and inflammatory as to amount to misconduct is normally decided by the trial judge in the exercise of his discretion. See, State v. Guevara, 270 Minn. 356, 133 N. W. (2d) 492. Ordinarily the trial judge is in the best position to appraise the effect on the jury of the conduct complained of. In this case the prosecuting attorney did not comment on evidence not in the record, he expressed no opinion as to the guilt or innocence of defendant, and he made no comments about defendant's previous record. It was apparently the judgment of the trial court that the language used was not inflammatory and did not require its intervention and that the prosecutor's remarks did not have any ap-

preciable prejudicial effect on the judgment of the jury. We conclude also that the prosecutor's argument did not require a new trial nor provide grounds for a mistrial.

It is clear that defendant in attacking the competence of his attorney has not made the showing of both incompetence and prejudice required by State ex rel. Adams v. Rigg, *supra,* and State v. Waldron, *supra.*

■ Defendant also asserts that defense counsel should have objected to testimony about the statements made by defendant to the sheriff, his wife, and the fellow prisoner. Defendant now characterizes these statements as confessions and claims that they should have been treated as such under the rule of Jackson v. Denno, 378 U. S. 368, 84 S. Ct. 1774, 12 L. ed. (2d) 908. These statements were not confessions as such, but were admissions against interest, one of the numerous exceptions to the hearsay rule. The rule with regard to admissions against interest is generally stated to be as follows:

"Any statement, whether oral or written, made by or attributable to a party to an action, which constitutes an admission against his interest and tends to establish or disprove any material fact in the case, is competent evidence against him in such action." 31A C. J. S., Evidence, § 272.

There is a recognized difference between an admission and a confession. This distinction is made by 2 Wharton, Criminal Evidence (12 ed.) § 337, as follows:

"A confession is an acknowledgment in express terms, by a party in a criminal case, of his guilt of the crime charged, while an admission is a statement by the accused, direct or implied, of facts pertinent to the issue, and tending, in connection with proof of other facts, to prove his guilt."

While there is authority for the proposition that admissions may be the equivalent of confessions, State v. Taylor, *supra,* under the circumstances of this case and in the light of what actually occurred, the doctrine of Jackson v. Denno, *supra,* is not applicable. The statements made by defendant in the Houston County jail were completely voluntary on his part and did not constitute a "confession" but rather constituted ad-

missions which were fully admissible at the trial. 5A Dunnell, Dig. (3 ed.) § 2463, and cases cited.

■ Defendant contends that the evidence did not show sufficient "bodily harm" to constitute aggravated robbery. Minn. St. 609.02, subd. 7, states:

" 'Bodily harm' means physical pain or injury, illness, or any impairment of physical condition."

All that need be shown in the instant case is that the victim, Winter, was subjected to "pain or injury" to constitute bodily harm and that the evidence was sufficient for the jury to find that he did experience pain from being struck and shoved in and out of his car by defendant. While there was no proof of permanent or serious injury, certainly the jury could find that the victim suffered physical pain, which is all the statute requires.

■ Defendant's claims that his constitutional rights of freedom from unlawful search and from self-incrimination and to proper extradition from an asylum state were violated have little, if any, support in the record. His assertions of fact regarding his being coerced into taking a lie detector test are not supported by the record and cannot be grounds for a reversal. Even though it is assumed to be true that defendant was taken to La Crosse, Wisconsin, for such purpose, it is hardly a tenable argument that the State of Minnesota lost jurisdiction over defendant by virtue of his crossing state lines when he was at all times in the custody of the Houston County sheriff. Where a person accused of a crime is found within the jurisdiction wherein he is charged and is held under process legally issued from a court thereof, neither the jurisdiction of the court nor its right to try him is impaired by the manner in which he was brought from another jurisdiction. State v. Porter, 274 Minn. 419, 144 N. W. (2d) 260; Frisbie v. Collins, 342 U. S. 519, 72 S. Ct. 509, 96 L. ed. 541; Lascelles v. Georgia, 148 U. S. 537, 13 S. Ct. 687, 37 L. ed. 549; People v. Klinger, 319 Ill. 275, 149 N. E. 799, 42 A. L. R. 581; 21 Am. Jur. (2d) Criminal Law, § 381. In the Frisbie case the United States Supreme Court said (342 U. S. 522, 72 S. Ct. 511, 96 L. ed. 545):

"This Court has never departed from the rule announced in Ker v. Illinois, 119 U. S. 436, 444, that the power of a court to try a person for

crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a 'forcible abduction.' No persuasive reasons are now presented to justify overruling this line of cases. They rest on the sound basis that due process of law is satisfied when one present in court is convicted of a crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will."

Moreover, defendant waived his right to challenge these claimed irregularities by pleading in the trial court without first appearing specially. See, State ex rel. Duhn v. Tahash, 275 Minn. 377, 147 N. W. (2d) 382.

Defendant's contention that the search of his home without a warrant was illegal is without merit. Mapp v. Ohio, 367 U. S. 643, 81 S. Ct. 1684, 6 L. ed. (2d) 1081, proscribes only unreasonable searches and forbids the use of evidence obtained from such a search in a prosecution. Here the search was not forced or coerced in any manner, and no evidence was seized during the search. The prosecution of this case was in no way influenced by the mere fact that officers entered defendant's home and his room without a warrant and none of his constitutional rights was abridged thereby.

We are satisfied that the evidence was sufficient to sustain defendant's conviction, that he was afforded competent representation by his court-appointed counsel, and that he received a fair trial. For the reasons herein stated, the judgment of the trial court must be affirmed.

Affirmed.