## STATE v. WAYNE A. RUSSELL AND OTHERS.*

164 N. W. (2d) 65.

January 3, 1969—No. 41183.

\* Certified to U.S. Supreme Court February 17, 1969.

224

*Ellis Olkon* and *Sheldon Eviden,* for appellants.

*Douglas M. Head,* Attorney General, *George M. Scott,* County Attorney, and *David C. Weinberg,* Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Murphy, Otis, Rogosheske, and Sheran, JJ.

Murphy, Justice.

Appeals from judgments of conviction in prosecutions against defendants for receiving and concealing stolen property. Minn. St. 609.53. Defendants assert error on the basis of an alleged illegal search and seizure and prejudicial conduct on the part of the prosecution during trial.

Since it is not seriously contended that the record fails to support the verdict, only a brief summary of the facts is necessary. The record establishes that on July 7, 1967, in Minneapolis, Minnesota, four or five masked men robbed Twin City Lines, Inc., of about $9,200 in coins. Employees then working identified defendants Paul Fleming and Wayne Russell as two of the men. On the same day defendants Gerald and Paul Fleming rented a U-Haul trailer, which they attached to a white Cadillac automobile. On July 11, 1967, all of the defendants were occupants of a white Cadillac automobile which pulled into the drive-in department of the Omaha National Bank in Omaha, Nebraska, where defendants attempted to change a large amount of coins into paper money. The police were promptly notified and defendants were arrested on suspicion of burglary. The Cadillac automobile was searched incident to the arrest, as were defendants. A large number of coins and coin wrappers were found in the automobile as well as a written contract for a U-Haul trailer. At the time they were booked by the Omaha police, defendant Russell

gave his name as Wayne Carr, and Paul Fleming gave his name as Paul Jackson. In a black bag, which Russell used to carry the coins into the bank, the police found a receipt indicating that defendants resided at the Commodore Motel in Omaha. In the meantime, the police had been informed of the Twin City Lines robbery, and they thereupon secured a search warrant for the room occupied by defendants at the Commodore Motel. In executing the search of the room, they found two automatic pistols, registration papers for the Cadillac automobile in the name of defendant Gerald Fleming, and a key to a Des Moines, Iowa, motel room. Police officers were told by the motel management that, in addition to the three defendants, there was a fourth person who was observed going and coming from the room. In examining the premises, the officers observed a U-Haul trailer parked directly outside the window of the room occupied by defendants. The keys to this trailer were found in the room. After determining that the trailer was the one used by defendants, the police checked further to ascertain if the reported fourth member of the group was hiding in the trailer. When the trailer was opened, the police observed a footlocker and a blue bag. The trailer was towed to the Omaha Police Department to be measured and examined for fingerprints. It was found that the trailer contained about $5,472.68 in coins, as well as two Twin City Lines bus tokens.

■ Prior to trial, a motion was made by defendants to suppress the coins and other evidence acquired by the search and seizure of the trailer. The motion to suppress was denied. The principal error asserted here is that the search of the U-Haul trailer was illegal and that the trial court erred in permitting in evidence the coins and other property removed therefrom after defendants had been placed in custody.

Defendants rely primarily upon Preston v. United States, 376 U. S. 364, 84 S. Ct. 881, 11 L. ed. (2d) 777, to support their contention that the search of the trailer was unlawful and that, therefore, the evidence obtained should have been suppressed. In the Preston case, the automobile belonged to a defendant who was arrested on a charge of vagrancy. The warrantless search of his automobile while he was in custody produced evidence which resulted in his conviction for the offense of conspiring to rob a Federally insured bank. It was held that the evidence was

inadmissible because the search of the car without a warrant was too remote in time or place to have been incidental to the arrest and therefore was made in violation of the test of reasonableness under the Fourth Amendment. We gave strict application to this authority in State v. Holmes, 273 Minn. 223, 140 N. W. (2d) 610. See, also, State v. Sorenson, 270 Minn. 186, 134 N. W. (2d) 115. However, the later decision of the United States Supreme Court in Cooper v. California, 386 U. S. 58, 87 S. Ct. 788, 17 L. ed. (2d) 730, makes it clear that not every warrantless search of an automobile made after defendants have been taken into custody is unlawful. In Cooper, it was held that the search of an automobile is reasonable within the meaning of the Fourth Amendment if it is clearly related to the reason the accused is arrested and the reason the car is impounded and is being retained.

Both Preston and Cooper have been considered and discussed in two of our recent cases: State v. Dill, 277 Minn. 40, 151 N. W. (2d) 413, and State v. LaJeunesse, 280 Minn. 381, 159 N. W. (2d) 261, as well as in an informative note in 52 Minn. L. Rev. 533. In LaJeunesse, this court revised its approach to determining the reasonableness of a warrantless search of a defendant's automobile after he had been taken into custody. In that case, the police had reasonable grounds to believe that the automobile driven by the defendant at the time he was arrested had been used in the commission of a robbery about 11 hours before the arrest. After the arrest, the car was searched without a warrant and evidence seized which would have implicated the defendant in another robbery. There was some question as to the amount of time which had elapsed between the arrest and the search. The defendant, relying on Preston, claimed that the evidence seized should not be admissible since the car was searched after he was taken into custody. We rejected the application of Preston and adopted instead the approach of the Cooper decision, which places great weight upon the relationship between the nature of the arrest and the objectives of the search. We held (280 Minn. 385, 159 N. W. [2d] 264):

"* * * [W]here the car was operated as the getaway vehicle, it also was an instrumentality of the crime and as such admissible in evidence. Hence we find no Fourth Amendment impediment to receiving in evidence

articles taken from the vehicle at the police station immediately following the arrest."

As in LaJeunesse, we think it may be fairly said that the vehicle here was in fact an instrumentality of the crime and that, consequently, the search of it was not unreasonable so as to be a violation of defendants' Fourth Amendment rights. The evidence established that the trailer was used to secrete the stolen coins, to transport them to a place where they could be exchanged, and to serve as a repository in the meantime. As such, it was an integral part of defendants' apparatus for the commission of the crime and was an instrumentality in achieving defendants' unlawful objectives. As in LaJeunesse, we conclude that the search was reasonable and valid.

■ In his closing argument to the jury, the prosecuting attorney made reference to an interview between one of the Omaha detectives and defendant Wayne Russell. In commenting upon this interview in which Russell refused to answer questions or give his name, the prosecutor said:

"* * * [B]ut what harm is there in talking if you are honest and aboveboard and have nothing to hide."

This comment followed a summary of the testimony of three state's witnesses, the officer to whom Russell refused to speak and two who testified as to the use of false names by defendants Paul Fleming and Russell. The trial court admonished the jury to disregard the statement. While this statement was not proper, it does not actually direct itself to the failure of defendants to take the witness stand in their own behalf. The impropriety of the remark, viewed in context of the record as a whole, does not appear to be of sufficient import to say that defendants' right to a fair trial had been impaired. State v. Johnson, 277 Minn. 230, 152 N. W. (2d) 768; State v. Heffelfinger, 200 Minn. 268, 274 N. W. 234; Chapman v. California, 386 U. S. 18, 87 S. Ct. 824, 17 L. ed. (2d) 705. Whether a new trial should be granted because of misconduct of the prosecuting attorney is ordinarily a matter within the discretion of the trial court since he is in the best position to evaluate the prejudicial nature of the conduct complained of.

■ Defendants also complain that in summation to the jury the prose-

cutor improperly commented on the failure of defendants to meet the state's proof when he pointed out that defendants had the same right as the state to subpoena witnesses, "and if there were any type of alibi to put these Defendants other than in Minneapolis on the early morning of July 7th [date of the robbery], those people would be here, but there are none." Defendants argue that the fact that no alibi witnesses appeared on their behalf does not justify the inference that there was no one who could establish proof of their presence elsewhere at the time of the robbery. While the argument did not suggest that an unfavorable inference be drawn from defendants' failure to testify, it called to the attention of the jury defendants' failure to produce witnesses if they had them. Here, again, the argument of counsel is one that we do not approve, but, in the light of the record as a whole, it was not so prejudicial as to amount to a denial of a fair trial. State v. Sheltrey, 100 Minn. 107, 110 N. W. 353; State v. Kolander, 236 Minn. 209, 52 N. W. (2d) 458.

■ Defendants also contend that they were prejudiced by the fact that twice during the trial one of the defendants who was handcuffed was exposed to the view of certain jurors in a hallway while on his way to the courtroom. It appears that the trial court felt these occurrences were probably unavoidable because of the physical layout of the courthouse facilities. He said:

"* * * I think it's probably expecting too much of the Sheriff's office to expect that when they bring a defendant down, that there be nobody in the hallway. We have no way, and I say they have no way of knowing what the situation may prove to be; so, it would be rather difficult to clear the hall to bring a defendant down."

We do not think the trial court was in error in denying the motions for a mistrial because of these incidents. The record does not establish that any prejudice resulted from the security measures employed by the sheriff's office in bringing the defendant to the courtroom. State v. Linzy, 279 Minn. 154, 156 N. W. (2d) 92.

Affirmed.