*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-0609**

State of Minnesota,
Respondent,

vs.

Roger Lee Voss, III,
Appellant.

**Filed February 23, 2026
Affirmed
Cochran, Judge**

Freeborn County District Court
File No. 24-CR-24-835

Keith Ellison, Attorney General, St. Paul, Minnesota; and

David J. Walker, Freeborn County Attorney, Albert Lea, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Julia Q. Brady, St. Paul, Minnesota (for appellant)

Considered and decided by Cochran, Presiding Judge; Frisch, Chief Judge; and Worke, Judge.

**NONPRECEDENTIAL OPINION**

**COCHRAN**, Judge

In this direct appeal, appellant argues that his conviction for first-degree burglary should be reversed because the evidence was insufficient to prove his guilt beyond a reasonable doubt. Alternatively, appellant argues that the district court abused its

discretion by denying his motion for a downward durational departure and imposing a sentence within the presumptive guidelines range. We affirm.

## FACTS

In 2024, respondent State of Minnesota charged appellant Roger Lee Voss III by an amended complaint with first-degree burglary—assault in violation of Minnesota Statutes section 609.582, subdivision 1(c) (2022). The state alleged that Voss entered M.L.'s garage without consent and assaulted M.L. after demanding M.L.'s car keys. The district court held a jury trial at which it heard testimony from police officers, M.L., and Voss, among others. The following facts are drawn from the trial evidence.

On the evening of May 24, 2024, M.L. was outside his garage when Voss ran around the corner of his house and stated that someone was chasing him. Voss told M.L. to call 911. Voss was crouched over and panting at the time. M.L. did not know Voss but still approached Voss and asked how he could help. Seeing a highway patrol car at the neighbor's home, Voss responded, "[y]ou called the cops on me." M.L. told Voss that he did not call the police and asked Voss "[w]hat is going on?" Voss then demanded M.L.'s bicycle, which was inside M.L.'s open garage. When M.L. refused, Voss entered M.L.'s garage, took M.L.'s bicycle, and tried to ride away but was unable to do so because the bicycle had two flat tires. Voss threw the bicycle to the ground, walked back into the garage, and told M.L. that he was going to take M.L.'s car. Voss demanded M.L.'s car keys but M.L. refused.

Voss then got very close to M.L. and reached toward M.L.'s suit coat pocket for the keys. M.L. pushed Voss away and tried to go inside his home. According to M.L., the

2

"next thing [he knew]," Voss was holding a "clipper" in his hand and was standing about 18-20 inches from M.L. with the "clipper up." M.L. believed Voss had found the clipper in the garage because his clipper was not there afterwards. M.L. testified he was afraid Voss was going to stab him with the clipper.

The two men began "tussling back and forth[.]" During the altercation, Voss pushed M.L. and M.L's backside hit the corner of an organ that was stored in his garage. As a result of being pushed into the organ, M.L. developed a two-inch bruise on his back. M.L. eventually pushed Voss out of the garage and Voss ran away.

M.L. called the police. An officer responded to the emergency call and interviewed M.L. According to the officer, M.L. was "distressed" and the officer noted that M.L. had difficulty composing his thoughts.

After interviewing M.L., police received an emergency call from a nearby restaurant. Two police officers went to the restaurant and spoke to the employee who placed the emergency call. The employee reported that Voss confronted him at the restaurant and demanded his car. The employee stated that Voss eventually ran away, at which point the employee called the police. Police officers searched the parking lot near the restaurant and found Voss hiding in the bushes. Voss told the officer who found him that he was impaired and had used methamphetamine earlier that day. Voss was placed under arrest.

At trial, Voss admitted to using methamphetamine on May 24. And he further admitted that he took M.L.'s bicycle and demanded the keys to M.L.'s car, although he denied trying to take the keys out of M.L.'s pocket. Voss also denied pushing M.L. or

3

threatening M.L. with a clipper, but he testified to having a set of vice grips in his possession while in M.L.'s garage. Voss further testified that, after he realized that M.L. was not going to help him, he ran away from M.L.'s house and went to the restaurant, where he asked the restaurant employee for his car.

The jury found Voss guilty of first-degree burglary—assault. Following trial, probation completed a presentence investigation report and recommended that the district court sentence Voss to 68 months in prison, which was the presumptive sentence. Voss moved for a downward durational departure from the Minnesota Sentencing Guidelines, arguing that his conduct was significantly less serious than that typically involved in the commission of the offense. At the sentencing hearing, the district court considered Voss's motion for a downward durational departure and heard arguments from counsel. The district court denied Voss's departure motion and sentenced Voss to 58 months in prison, which was the lower end of the presumptive sentencing range.

Voss appeals.

## DECISION

Voss raises two issues on appeal. First, Voss claims that the evidence was insufficient to sustain the jury's verdict of first-degree burglary—assault because M.L.'s bruise does not constitute bodily harm and therefore the state failed to prove an assault occurred within the meaning of the assault statute. Alternatively, Voss asserts that the district court abused its discretion by denying his motion for a downward durational departure at sentencing. We address each argument in turn.

4

**I.    The evidence was sufficient to convict Voss of first-degree burglary—assault.**

In a criminal trial, due process requires the state to prove each element of the crime beyond a reasonable doubt. *State v. Beganovic*, 991 N.W.2d 638, 654 (Minn. 2023); *see* U.S. Const. amend. XIV; Minn. Const. art. I, § 7.  Voss was convicted of first-degree burglary—assault under Minnesota Statutes section 609.582, subdivision 1(c).  That provision states: "Whoever enters a building without consent and with intent to commit a crime, or enters a building without consent and commits a crime while in the building, either directly or as an accomplice, commits burglary in the first degree" if "the burglar assaults a person within the building or on the building's appurtenant property."  Minn. Stat. § 609.582, subd. 1(c).  Therefore, to convict Voss of first-degree burglary—assault, the state was required to prove beyond a reasonable doubt that Voss entered a building without consent and intended to commit or did commit a crime while in the building and assaulted a person within the building or the building's appurtenant structure. *Id.*

Here, the underlying crime alleged was assault—harm.[1]  "Assault" means in relevant part "the intentional infliction of or attempt to inflict bodily harm upon another." Minn. Stat. § 609.02, subd. 10 (2022).  Assault-harm is a general-intent crime, meaning the state need not prove that the actor intended the harm, but only that the defendant "intentionally applied force to another person without [their] consent." *State v. Lampkin*, 994 N.W.2d 280, 291 (Minn. 2023) (quotation omitted).  Accordingly, taking into

---

[1] The state alleges that Voss committed the crime of assault-harm by pushing M.L. into an organ, which caused M.L. to develop a bruise.  The state relies on this same alleged conduct to satisfy the condition of paragraph (c) that "the burglar assaults a person within the building."

consideration the required intent, the state was required to prove that Voss entered M.L.'s garage without consent and assaulted M.L. while in the garage by intentionally inflicting bodily harm on M.L. *Id.*; *see also* Minn. Stat. § 609.02, subd. 10(2) (defining assault—harm). "Bodily harm" includes "physical pain or injury, illness, or any impairment of physical condition." *Id.*, subd. 7 (2022).

On appeal, Voss does not contest that he entered M.L.'s garage (a building) without consent or that he intentionally pushed M.L. while in the garage. He argues only that the evidence was insufficient to prove beyond a reasonable doubt that he committed an assault while in M.L.'s garage because the state did not prove that Voss inflicted "bodily harm" upon M.L. as that term is defined in section 609.02, subdivision 7. He contends that "[a] small bruise, on its own, should not be considered bodily harm." With this argument in mind, we next turn to the standard of review on appeal.

When considering a sufficiency-of-the-evidence challenge, we conduct "a painstaking review of the record to determine whether the evidence and reasonable inferences drawn therefrom, viewed in a light most favorable to the verdict, were sufficient to allow the jury to reach its verdict." *Lapenotiere v. State*, 916 N.W.2d 351, 360-61 (Minn. 2018) (quotation omitted). In performing this analysis, we assume the jury "believed the state's witnesses and disbelieved any contradictory evidence." *State v. Webster*, 894 N.W.2d 782, 785 (Minn. 2017) (quotation omitted). "We will not disturb a verdict if the jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude that the

6

defendant was proven guilty of the offense charged." *State v. Flowers*, 788 N.W.2d 120, 133 (Minn. 2010) (quotation omitted).

We apply this traditional standard of review when the defendant's conviction is supported by direct evidence. *State v. Horst*, 880 N.W.2d 24, 39-40 (Minn. 2016); *see also State v. Harris*, 895 N.W.2d 592, 599 (Minn. 2017) (defining direct evidence as "evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption" (quotation omitted)). But when direct evidence alone is insufficient to prove the element beyond a reasonable doubt and the state also relies on circumstantial evidence, we apply a heightened two-step analysis known as the circumstantial-evidence standard of review. *Horst*, 880 N.W.2d at 39-40. Because Voss acknowledges that "the evidence at issue is direct evidence," we analyze Voss's arguments under the traditional standard of review.

Voss argues that the evidence is not sufficient to establish that he inflicted bodily harm on M.L. Specifically, he disputes whether a bruise, on its own, constitutes bodily harm within the meaning of the assault statute. Voss argues that minor injuries, such as a small bruise, can be considered bodily injury only if "accompanied by pain or other physical injuries." Because M.L. did not testify that he experienced pain, Voss argues that M.L.'s injury does not qualify as bodily harm. In response, the state contends that a plain reading of the statute, coupled with precedential caselaw, supports a determination that a bruise qualifies as bodily harm. We agree with the state.

The objective of statutory interpretation is to ascertain and effectuate the intent of the legislature. *See* Minn. Stat. § 645.16 (2024); *State v. Latino*, 15 N.W.3d 654, 658

7

(Minn. 2025). "We begin our analysis with the relevant statutory text because the plain language of the statute is our best guide to the [l]egislature's intent." *Latino*, 15 N.W.3d at 659 (quotation omitted). When interpreting a statute, we first determine whether the language is ambiguous. *Id.* at 658-59. If there is "only one reasonable way to read the text," the statute is unambiguous and we will enforce the statute's plain meaning. *State v. Fugalli*, 967 N.W.2d 74, 77 (Minn. 2021). On appeal, we review questions of statutory interpretation de novo. *Roberts v. State*, 945 N.W.2d 850, 853 (Minn. 2020).

As noted above, section 609.02, subdivision 7, sets forth the definition of "bodily harm." The legislature defines bodily harm as "physical pain *or* injury, illness, *or* any impairment of physical condition." Minn. Stat. § 609.02, subd. 7 (emphasis added). The word "or" is disjunctive. *See State v. Abdus-Salam*, 1 N.W.3d 871, 878 (Minn. 2024) ("If the [l]egislature unambiguously uses the word 'or,' we read the term in the disjunctive and require that only one of the possible factual situations be present in order for the statute to be satisfied." (quotation omitted)); *Munger v. State*, 749 N.W.2d 335, 338 (Minn. 2008) (stating that provisions are disjunctive when "signified by the disjunctive conjunction 'or' and separated by a comma"). Therefore, "bodily harm" as used in the assault statute can be proved by evidence of any one of the following: "physical pain *or* injury, illness, *or* any impairment of physical condition." Minn. Stat. § 609.02, subd. 7. In other words, evidence of an "injury" to the body is sufficient by itself to establish bodily harm. Based on a plain reading of the statute, we are satisfied that a bruise constitutes "bodily harm" within the meaning of section 609.02, subdivision 7, because a bruise is an "injury" to the body. *See*

8

*Black's Law Dictionary* 936 (12th ed. 2024) (defining "bodily injury" as "[p]hysical damage to a person's body").

A review of caselaw further bolsters this conclusion. In *State v. Jarvis*, the Minnesota Supreme Court recognized that only a "minimal amount of physical pain *or* injury" is necessary in order "to satisfy the definition of 'bodily harm.'" 665 N.W.2d 518, 522 (Minn. 2003) (emphasis added). The supreme court reached a similar conclusion in *State v. Johnson*, 152 N.W.2d 768, 770 (Minn. 1967). In *Johnson*, the victim reported that he was forced out of his car during an aggravated robbery, got a bruise on his hip, and experienced pain. *Id.* In seeking to overturn his conviction, the defendant in *Johnson* asserted that the evidence was insufficient to show bodily harm. *Id.* at 773. The supreme court rejected this argument, stating that, "[a]ll that need be shown . . . is that the victim . . . was subjected to pain *or* injury to constitute bodily harm." *Id.* (quotation omitted) (emphasis added); *see also State v. Bowser*, 307 N.W.2d 778, 779 (Minn. 1981) (stating in a criminal-sexual-conduct case that "[e]ither the pain *or* the minimal injury would be sufficient to establish bodily harm under section 609.02" (emphasis added)).

Voss relies on *State v. Mattson* to persuade us otherwise and argues that bruising alone is not enough to constitute bodily harm. 376 N.W.2d 413 (Minn. 1985). In *Mattson*, the supreme court determined that the evidence was sufficient to establish that a victim suffered bodily harm when she was bruised during an assault *and* experienced soreness. *Id.* at 414-15. But the supreme court did not hold in *Mattson* that both bruising *and* soreness were necessary to establish bodily harm for purposes of section 609.02 or that bruising by itself cannot constitute bodily harm. *Id.* And Voss has not identified any case,

9

nor are we aware of any case, that holds that bruising alone is insufficient to establish "bodily harm" for purposes of section 609.02. In sum, both the plain language of section 609.02 and caselaw interpreting the statute support the conclusion that "bodily harm" under section 609.02 can be established by evidence of a bruise because a bruise is an "injury" to the human body. Minn. Stat. § 609.02, subd. 7.

Here, it is uncontested that M.L. suffered a bruise that was inflicted by Voss. M.L. testified that he and Voss were "pushing back and forth" and M.L. struck the corner of an organ in his garage after being pushed by Voss. As a result, M.L. developed "a small bruise" approximately two inches in size on his back. M.L.'s uncontested testimony on this point supports the jury's verdict that M.L. suffered bodily harm that was intentionally inflicted by Voss. And while Voss argues that M.L. failed to substantiate his testimony by providing a photo of the bruise or seeking medical care, these arguments go to the credibility of M.L.'s testimony and "the credibility of a witness [is] for the jury to determine." *State v. Foreman*, 680 N.W.2d 536, 539 (Minn. 2004); *see also State v. Bliss*, 457 N.W.2d 385, 391 (Minn. 1990) (cautioning that an appellant's "attempt to retry his case by asking us to reevaluate [a witness]'s credibility is contrary to [the court's] role" on appellate review).

In sum, direct evidence presented by the state was sufficient for the jury to reasonably conclude that Voss pushed M.L. into an organ while in M.L.'s garage and M.L. suffered bodily harm as a result. Accordingly, we conclude that the evidence was sufficient to prove each element of first-degree burglary—assault beyond a reasonable doubt.

10

**II.    The district court did not abuse its discretion by denying Voss's motion for a downward durational departure.**

Voss argues that, even if sufficient evidence supports his conviction, we should remand for resentencing because the district court abused its discretion by denying his motion for a downward durational departure.  We disagree.

The Minnesota Sentencing Guidelines provide presumptive sentences for felony offenses.  Minn. Sent'g Guidelines 2.C (2022).  A presumptive sentence is considered "appropriate for all typical cases sharing criminal history and offense severity characteristics."  Minn. Sent'g Guidelines 1.B.13 (2022).  The sentencing guidelines prescribe a sentence or a range for the sentence that is "presumed to be appropriate." *State v. Soto*, 855 N.W.2d 303, 308 (Minn. 2014) (citation omitted).  The district court "must pronounce a sentence within the applicable range unless there exist identifiable, substantial, and compelling circumstances" distinguishing the case and overcoming the presumption in favor of the guidelines sentence.  *Id.* (citation omitted); *see also State v. Solberg*, 882 N.W.2d 618, 623 (Minn. 2016) (noting that the guidelines seek to "maintain uniformity, proportionality, rationality, and predictability in sentencing of felony crimes" (citation omitted)).

A downward durational departure is a sentence that is shorter in length than the presumptive sentence and "must be based on factors that reflect the seriousness of the offense, not the characteristics of the offender."  *Solberg*, 882 N.W.2d at 623 (distinguishing between dispositional departures and durational departures).  "[T]o be the basis for a downward departure, a factor must tend to excuse or mitigate the offender's

11

culpability for the offense." *State v. Esparza*, 367 N.W.2d 619, 621 (Minn. App. 1985). "A downward durational departure is justified only if the defendant's conduct was significantly less serious than that typically involved in the commission of the offense." *Solberg*, 882 N.W.2d at 624 (quotation omitted).

A district court has "great discretion in the imposition of sentences" and we will reverse its decision "only for an abuse of that discretion." *Soto*, 855 N.W.2d at 307-08 (quotation omitted). Accordingly, we will not interfere with a district court's decision to impose the presumptive sentence "as long as the record shows the sentencing court carefully evaluated all the testimony and information presented before making a determination." *State v. Pegel*, 795 N.W.2d 251, 255 (Minn. App. 2011) (quotation omitted). It is only in a "rare" case that we will reverse a district court's decision not to depart. *State v. Walker*, 913 N.W.2d 463, 468 (Minn. App. 2018) (quoting *State v. Kindem*, 313 N.W.2d 6, 7 (Minn. 1981)).

Here, the sentencing worksheet indicated that the presumptive sentence for the offense was 68 months in prison, with a lower range of 58 months and an upper range of 81 months. Voss requested a downward durational departure to 36 months in prison, arguing that his "conduct was significantly less serious than that typically involved" in a first-degree-burglary offense. The district court denied Voss's motion. In doing so, the district court credited Voss's explanation that he was impaired and noted that it took Voss's statements "as sincere." And the district court agreed with the defense that the case was not a "horrific first-degree burglary." But after considering all the circumstances surrounding the offense, including the nature of the intrusion and the emotional impact on

12

M.L., the district court declined to depart and sentenced Voss to 58 months in prison—the lower end of the presumptive sentencing range.

We discern no abuse of discretion in the district court's decision. A district court is not required to depart, even when substantial and compelling circumstances are present. *See State v. Back*, 341 N.W.2d 273, 275 (Minn. 1983) ("[W]e will not interfere with a sentence that falls within the presumptive sentence range even if there are grounds that would justify departure."). And while a district court "is required to give reasons for departure, an explanation is not required when the court considers reasons for departure but elects to impose the presumptive sentence." *State v. Musse*, 981 N.W.2d 216, 220 (Minn. App. 2022), *rev. denied* (Minn. Dec. 28, 2022) (quoting *State v. Van Ruler*, 378 N.W.2d 77, 80 (Minn. App. 1985)). The district court imposed a 58-month prison sentence, which represented the bottom level of the presumptive range. Although no explanation was required, the transcript of the sentencing hearing shows that the district court considered the arguments for and against departure and elected to impose a guidelines sentence.

In urging this court to reach a different result, Voss claims the district court incorrectly relied on its finding that Voss intruded onto M.L.'s "peace" when denying his departure request. The district court stated that "[t]he home is a person's peace," and "without that peace . . . [M.L. is] not comfortable in the community." Voss argues that an intrusion into someone's home was a factor contemplated by the legislature when it set the punishment for the crime and should not have affected the district court's sentencing decision. As support, Voss cites *State v. Edwards*, 774 N.W.2d 596 (Minn. 2009).

However, *Edwards* instructs that a district court "may not base an *upward* departure on facts necessary to prove elements of the offense being sentenced" or "on facts that, while not necessary to satisfy the elements of the offense in question, were nonetheless contemplated by the legislature when it set the punishment for the offense being sentenced." *Id.* at 602 (emphasis added). The case before this court does not involve an upward departure and Voss's reliance on *Edwards* is not persuasive.

Voss also argues that there is evidence of mitigating circumstances that support his motion for a downward durational departure. Specifically, he contends that his conduct was significantly less serious than the typical first-degree burglary offense. In determining whether a defendant's conduct is significantly less serious than the typical offense, "it is proper for the [district] court to consider the course of conduct underlying the charge for which the defendant is being sentenced." *State v. Cox*, 343 N.W.2d 641, 643 (Minn. 1984). Upon reviewing the record, we are satisfied that the district court considered the course of conduct underlying Voss's burglary conviction and weighed the arguments for and against departure before imposing a sentence at the bottom of the presumptive sentencing range. *Id.* And an appellate court will not interfere with a guidelines sentence even if there are grounds to support a departure. *Back*, 341 N.W.2d at 275. Thus, even assuming that mitigating factors were present, this is not the "rare case" warranting reversal. *Soto*, 855 N.W.2d at 305. Accordingly, we conclude that the district court did not abuse its discretion by denying Voss's motion for a downward durational departure.

    **Affirmed.**