## STATE v. THOMAS KOTLAREK.

155 N. W. (2d) 891.

January 19, 1968—No. 40,390.

C. Paul Jones, State Public Defender, John L. Tambornina, and Rosalie Wahl, for appellant.

Douglas M. Head, Attorney General, John C. Arko, County Attorney, and Keith M. Brownell, Assistant County Attorney, for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from a judgment entered pursuant to defendant's plea of guilty to the crime of first-degree manslaughter.

So far as an incomplete record indicates, the facts do not seem to be seriously in dispute. On April 25, 1965, defendant, Thomas Kotlarek, was visiting at the home of Robert Kaiser and the woman who was supposed to be his wife. All three had been drinking heavily. Exactly what happened is not to be found in the record, but Kaiser was shot four times by a single-shot rifle that was so dilapidated that the empty cartridge had to be removed from the chamber manually before a new cartridge could be inserted. He was shot twice in the head and twice in the chest, and no one denies that he died as a result of this shooting.

Defendant was originally arrested on April 25 and charged with public intoxication, to which he pled guilty. On May 5, he was arrested for Kaiser's death. Originally he demanded a preliminary hearing but he was later indicted by the grand jury for first-degree murder. Over the objection of the prosecuting attorney, the trial court permitted him to plead guilty to first-degree manslaughter, and he was sentenced to the State Prison for a term not exceeding 10 years.

■ The facts relating to the principal issue in the case, namely, whether the woman who was supposedly married to the decedent could testify before the grand jury, have some rather interesting ramifications. Originally defendant was married in the early twenties. He was divorced from that woman on December 31, 1925, and married Edith Smith, the woman who was supposed to be married to the decedent at the time of the shooting. Defendant and Edith separated in 1948. On September 8, 1952, defendant in a sworn application for a marriage license

stated that he was not married at the time. He thereafter married one Hazel Hurd on September 13, 1952. He informed Edith that it was all right for her to marry the decedent, which she did, thinking that she and defendant had been divorced. As a matter of fact there had been no divorce so she remained the legal wife of the defendant even though she was ostensibly married to decedent. We will refer to her as Edith Kaiser.

Before trial, defendant moved to quash the indictment on the ground that it was based on Edith Kaiser's testimony and that she was an incompetent witness against him because she was still legally married to him. The court denied the motion to quash but did suppress the testimony of the so-called Mrs. Kaiser for the purposes of trial. Inasmuch as the defendant entered a plea of guilty to first-degree manslaughter, the trial became unnecessary.

The statutory provisions which become important here are Minn. St. 595.02, which provides, so far as material:

"Every person of sufficient understanding, including a party, may testify in any action or proceeding, civil or criminal, in court or before any person who has authority to receive evidence, except as follows:

"(1) A husband cannot be examined for or against his wife without her consent, nor a wife for or against her husband without his consent, nor can either, during the marriage or afterwards, without the consent of the other, be examined as to any communication made by one to the other during the marriage."

And Minn. St. 628.59, which contains the statutory provisions relating to evidence upon which an indictment shall be based, and provides in part:

"In the investigation of a charge for the purpose of indictment or presentment, the grand jury shall receive no other evidence than:

"(1) Such as is given by witnesses produced and sworn before it; and

"(2) Legal, documentary, or written evidence.

"It shall receive none but legal evidence."

Having in mind the fact that the so-called Mrs. Kaiser was still the legal wife of defendant, it is clear that under these statutory provisions she was incompetent to testify against defendant either on a trial or before the grand jury. State v. Marshall, 140 Minn. 363, 168 N. W. 174; State v. Ruther, 141 Minn. 488, 168 N. W. 587. However, the question before us is not whether Mrs. Kaiser was a competent witness against defendant, but, assuming that she was not and that she did testify before the grand jury, must the indictment then be quashed upon a showing of these facts? In the two cases cited above we held that even though a wife improperly gives evidence against her husband before the grand jury it is not fatal to the indictment unless there is a showing that the indictment was based upon such incompetent evidence. We recently had occasion to examine this subject in State v. Thompson, 273 Minn. 1, 139 N. W. (2d) 490, certiorari denied, 385 U. S. 817, 87 S. Ct. 39, 17 L. ed. (2d) 56, where we pointed out the difficulty of going behind the indictment and determining what evidence the grand jury relied on in indicting the defendant if there were witnesses who were competent to testify and did appear before the grand jury and give such evidence that the indictment might have been returned even in the absence of the illegal or incompetent evidence. We there said (273 Minn. 15, 139 N. W. [2d] 502):

"In the case now before us, while the suspicion that the second grand jury was influenced by hearsay coming from the lips of others after Anderson had confessed seems reasonable, there is no proof of it. In the nature of things, the burden of showing upon what a grand jury based its decision is a heavy one, and probably in many cases cannot be met. Obviously, if its deliberations are to remain secret, as is intended, in determining whether the indictment is based on competent evidence or not, much must be left to the trial court; and in order for us to reverse the trial court's decision after a trial and conviction, it must appear that incompetent evidence has so far influenced the grand jury that an indictment would not have been returned without it."

In the case before us several witnesses in addition to Edith Kaiser testified before the grand jury. After the shooting defendant went to the

home of one Mrs. Hutton and called police. She testified, as did some police officers. Even assuming that Edith gave evidence against the defendant, which we have no way of knowing, the probabilities are that the other witnesses gave the grand jury enough evidence upon which to base the indictment, even in the absence of Edith's testimony. Under these circumstances we think the cases cited above are controlling and that the trial court correctly held that the indictment should not be quashed. Defendant has entered a plea of guilty wherein he admits that he committed the shooting which caused Kaiser's death.

■ The only other issue raised by defendant involves his right to be credited with the time he spent in the county jail prior to his conviction. He spent about 6 months from the time he was arrested until he was sentenced. Unfortunately, our statute gives to this court no power to give him credit for such time. Minn. St. 609.145, subd. 1, contains a provision for crediting one whose conviction is set aside with the time for which he was imprisoned if he is subsequently convicted of a crime growing out of the same act or omission, and subd. 2 provides that a sentence of imprisonment upon conviction of a felony is reduced by the time spent in confinement following conviction and before commitment to the commissioner of corrections. Neither of these provisions covers the situation we have here, and the Advisory Committee's Comment on the adoption of this statutory provision as part of the Criminal Code of 1963 makes it obvious that the committee considered and rejected a proposal to give credit for time spent in confinement prior to conviction. See, 40 M. S. A. p. 143. Here the maximum sentence for manslaughter in the first degree could have been 15 years or a fine of not more than $15,000 or both.[1] The court limited the sentence to 10 years and we have no way of knowing whether the court took into consideration the time spent in the county jail or not. Possibly the sentence was limited to less than the maximum because defendant had spent several months in jail, but in any event we have no power to reduce the sentence or to give credit for such time.

It follows there must be an affirmance.

Affirmed.

---

[1] See, Minn. St. 609.20.