THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ANGEL
RIVERA, Defendant-Appellant.

(No. 56007;

First District (2nd Division)—July 10, 1973.

Gerald W. Getty, Public Defender, of Chicago, (Robert M. Gray and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Bernard Carey, State's Attorney, of Chicago, (Elmer C. Kissane and Robert J. Cohen, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HAYES delivered the opinion of the court:

Indictment No. 71-226, filed on 26 January 1971, charged defendant-appellant Rivera (hereafter defendant or Rivera) with the unlawful sale on 15 October 1970 of a narcotic drug, to-wit: heroin (more specifically described at trial by a police chemist as .14 grams of diacethyl morphine hydrochloride. (Ill. Rev. Stat. 1969, ch. 38, sec. 22—3.) At the arraignment on 3 February 1971, at which defendant entered a plea of not guilty, defendant promptly informed the court that he "don't speak English." By 11 February 1971, the court had appointed the Public Defender to represent defendant. At a bench trial on 8 April 1971, the court found defendant guilty of the offense of unlawful possession of a narcotic drug, and sentenced him (under the provisions of Ill. Rev. Stat. 1969, ch. 38, sec. 22—40) to a term in the Penitentiary of not less than three years nor more than nine years (to run concurrently with a like term which had already been imposed on defendant on a plea of guilty to Indictment No. 71-500, a matter not involved in this appeal).

The evidence presented by the State in its case in chief consisted of the testimony of two Chicago police officers, Officer Markham and his

partner Officer Rouzan. Officer Markham testified that he was serving as an undercover officer for the narcotics section of the Vice Control Division on 15 October 1970. Early that evening, he was driving his personal automobile and was accompanied by a "special employee" of the police department. He stopped his automobile at a corner where he was introduced by the "special employee" to two men then identified only as Ponce and Louie, but whom the officer later identified as defendant Rivera and his codefendant, one Lucas Torres. Torres asked Officer Markham how much heroin he wanted to buy. After Markham had replied that he wanted two bags and after he had paid Torres $11.00, Torres nodded to defendant who then spat two green-colored balloons out of his mouth into his hands. Defendant then handed the two bags to Officer Markham. The officer thereupon drove away and joined his partner, Officer Rouzan, two blocks away. After taking the "special employee" home, the two officers went to Headquarters where a test was performed on a portion of the contents of one of the balloons. The test revealed that the balloon contained heroin. On 21 October 1970, Officer Rouzan, to the knowledge of Officer Markham, obtained arrest warrants for "Ponce Doe" and "Louis Doe". The arrest of defendant and Torres did not occur until 23 November 1970, when Officer Markham saw the two men and notified Officer Rouzan where he could make the arrests.

Defendant did not testify in his own behalf. Codefendant Torres did and denied having made any sale to Officer Markham, and stated that he had first met Officer Markham only after his arrest. There was no other testimony for the defense.

At the jury-waiver proceeding, which immediately preceded the trial in the instant case, the Public Defender informed the court that "this will be a bench trial", and then immediately added: "Mr. Rivera has some difficulty in communicating. He is of Spanish origin. Mr. Torres speaks English and Spanish and will interpret as to the jury-waiver." Codefendant Torres had been indicted for the same offense arising out of the same occurrence, and both codefendants were represented by the same Public Defender. The court said: "All right. I want to know whether each of you understand what [the Public Defender] told the court. He has indicated to this court that you wish to have this trial by the court. You want the court to hear the case, is that correct?"

Rivera: "Yes."

Torres: "Yes."

The court then proceeded to explain the fact that defendant and codefendant had a right to a jury trial and what that right meant. At each of two stages of this explanation, the court said: "You understand that?" The first time, Rivera replied "Yes", and then Torres replied "Yes", speak-

ing for himself. The second time, Torres replied "Yes", speaking for himself. The court then said: "Would you [Torres] ask him [Rivera] if he understands that?" Before Torres said anything to Rivera, Rivera said "Yes". The court then said: "He understands that?" and Torres replied "Yes".

The court then said: "What you are asking then and what [the Public Defender] is saying is that you want the Court to hear the evidence and you want this Court to decide your innocence or guilt on the charge, is that right?" Torres said "Yes", speaking for himself. The court then said to Torres: "Ask him [Rivera] if this is what he wants too." Before Torres asked Rivera anything, Rivera said "Yes", whereupon Torres echoed "Yes".

The first ground of this appeal is that at the jury-waiver proceeding, defendant Rivera did not "knowingly and understandingly" waive his right to trial by jury, for which reason the court lacked jurisdiction to enter a finding of guilty. The basis for this position is the fact that no interpreter or translator was utilized to assist Rivera.

■■ In *People v. Soldat* (1965), 32 Ill.2d 478, our supreme court said:
> "The calling of an interpreter is normally within the discretion of the trial court, and a conviction will be reversed only when there has been an abuse of that discretion which operates to deprive a defendant of some basic right."

Defendant, however, calls our attention to the 1970 case of *U.S. ex rel. Negron v. the State of New York*, 434 F.2d 386, in which the Court of Appeals for the Second Circuit held that, under the Sixth and Fourteenth Amendments to the Federal Constitution, the trial judge in a State criminal proceeding has a duty to appoint an interpreter *sua sponte* at any stage of the proceeding at which the need to do so, in order to enable the defendant effectively to participate, either becomes or ought to have become manifest to the court. We hold that, in the instant case, the trial judge discharged that duty by acquiescing in the suggestion of defense counsel, made at the very outset of the jury-waiver proceeding, that co-defendant Torres act as interpreter for Rivera.

Defendant next suggests a further development in the law as to this matter of an interpreter, namely, that, if and when it becomes apparent to the trial judge that the interpreter is not in fact interpreting, then it becomes the duty of the trial judge *sua sponte* to intervene and to take whatever action he deems necessary to insure that interpretation does in fact occur. The factual basis in this case for defendant's suggestion is as follows: At the post-trial hearing in aggravation and mitigation, the trial court itself appointed an interpreter for defendant (perhaps because, at this stage of the proceeding, the interest of Torres first became differ-

ent from the interest of defendant). The record of that hearing shows that, on at least one occasion, interpretation did in fact occur. That record was made by the same court reporter who made the record of the pre-trial jury-waiver proceeding and of the trial itself. But the record for those two stages of the criminal proceeding does not show that any interpretation in fact occurred. Defendant wishes us to indulge in the negative inference that therefore no interpretation did in fact occur; that the absence of interpretation ought to have been observable by the trial court; and that, therefore, the trial court had a duty to intervene *sua sponte* to assure that interpretation would in fact occur, which he had failed to do.

Such a negative inference is too slender a reed on which to predicate reversible error. Even if we indulged it, the record would also have to show that it should have been apparent to the trial judge that there was a need for interpretation in fact to occur, because defendant not only did not speak English but also did not understand spoken English. The *Negron* opinion states that such was the fact in that case. Here, however, the record of the jury-waiver proceeding indicates that defendant did understand spoken English, because he responded to the trial judge's questions before Torres had any opportunity to translate those questions for him.

■■ The second ground of this appeal is closely related to the first. It is that the failure of the trial court to advise defendant of his right to have a court-appointed interpreter to assist him *during his trial* was constitutional error. The controlling law is the same for any stage of the criminal proceeding, though the trial stage itself may require the closest scrutiny on review. Defendant observes that his counsel's proffered designation, at the jury-waiver proceeding, of codefendant Torres as the interpreter contained the qualifying phrase "as to the jury-waiver". Defendant suggests that this qualification meant "as to the jury waiver *only*", so that defendant did not have the services of any interpreter whatever during his subsequent trial. In view of the fact that the subsequent bench trial immediately followed the jury-waiver proceeding, and in view of the fact that the proffer of codefendant Torres as interpreter was not expressly limited to the jury-waiver proceeding, we think the services of Torres as an interpreter continued to be available to defendant during his trial. There was, therefore, no reason for the court to advise defendant of any right to a court-appointed interpreter because no necessity for a court-appointed interpreter presented itself to the trial judge so long as Torres, at the initial suggestion of defendant's own counsel, was available as interpreter. Two-way communication be-

tween defendant and his counsel through Torres was unimpaired, and could be expected to be open and candid. The testimony and physical evidence supporting the charges against each defendant were identical. The defense of each defendant was identical. In no way was the interest of Torres in any conflict with the interest of defendant.

The third ground of defendant's appeal is that, considering the evidence in a light most favorable to the State, it is still insufficient to establish his guilt beyond a reasonable doubt. To support this position, defendant calls our attention to certain discrepancies in the record:

(1) The Bill of Particulars alleged that the offense took place between 4:30 and 6:30 P.M. on 15 October 1970, while Officer Markham testified that it occurred about 7:30 P.M. on that date;

(2) Officer Markham testified that he delivered the balloons to Officer Rouzan when he met the latter immediately after the incident, while Officer Rouzan testified that he received the balloons only later at the police station;

(3) Officer Markham testified that he personally prepared the "Narcotic Unit File Face Sheet", while Officer Rouzan testified that he did so;

(4) Officer Markham testified that, when he met Officer Rouzan immediately after the incident, he gave an oral description of defendant to Officer Rouzan (including the fact that defendant had no fingers on either hand), and that Officer Rouzan wrote the description in a report that same evening, whereas no report was produced which contained this striking descriptive detail as to defendant.

Defendant asks us to hold that these discrepancies create a reasonable doubt as to the credibility of the evidence against him and as to its sufficiency to establish his guilt. Furthermore, he asks us to infer a reasonable doubt as to his identification (1) from the fact that the alleged offense occurred on 15 October 1970 but his arrest did not occur until 23 November 1970, even though he had been seen during that interim by Officer Markham who knew that an arrest warrant for him was outstanding, and (2) from the fact that the "special employee" was not called as a witness for the State at the trial.

■■■ As to the matter of identification, Officer Markham positively identified defendant as one of the two individuals involved. (*People v. DeSavieu* (1970), 120 Ill.App.2d 45, 256 N.E.2d 80.) As to the failure to call the "special employee", the State is under no obligation to call every available witness, and its failure to call any given witness does not create

a presumption that, if called, the witness' testimony would have been unfavorable to the State. *People v. Jones* (1964), 30 Ill.2d 186, 195 N.E. 2d 698.

■■ As to the evidentiary discrepancies brought to our attention, not only do they relate to minor details, but

"it is neither the duty nor the privilege of a reviewing court to substitute its judgment as to the weight of the disputed evidence or the credibility of witnesses for that of the trier of fact who had the evidence presented and observed the demeanor of the witnesses * * *; and we will not reverse a criminal conviction where the evidence is not so improbable as to raise a reasonable doubt of guilt." *People v. Novotny* (1968), 41 Ill.2d 401, 412, 244 N.E.2d 182, 188.

The final contention of defendant on this appeal is that, while the appeal was pending, legislation was enacted which affected the penalty for the offense of which defendant was convicted and which provided that, should the new penalty be more favorable to defendant than the old penalty and should defendant's case not have been finally adjudicated as of the effective date of the new legislation, the penalty under the new legislation is to apply. The new interim legislation referred to is the Controlled Substances Act which became effective on 16 August 1971 (Ill. Rev. Stat. 1971, ch. 56½, secs. 1100 *et seq.*) and which expressly repealed (Ill. Rev. Stat. 1971, ch. 56½, sec. 1603(a)) the Uniform Narcotic Drug Act (Ill. Rev. Stat. 1969, ch. 38, sec. 22—1 through 22—49.1), which had defined the offense of which defendant had been convicted (sec. 22—3) and had authorized the penalty under which defendant had been sentenced (sec. 22—40). The formerly authorized penalty for a first offense of unlawful possession of a narcotic drug was a fine of not more than $5,000 and imprisonment in the penitentiary for a term of not less than two years nor more than ten years. The record of the hearing in aggravation and mitigation adequately discloses that this was defendant's first offense of unlawful possession of a narcotic drug, and that the offense charged in Indictment No. 71-500 (to which defendant had at that time pleaded guilty and for which he had at that time been sentenced to a term of three to nine years in the penitentiary) was an unrelated offense.

The new offense comparable to the offense for which defendant had been convicted, and the penalty for that new offense, are provided by Ill. Rev. Stat. 1971, ch. 56½, sec. 1402(b). The offense is the knowing possession of less than 30 grams of any controlled substance containing heroin. The penalty is imprisonment in a penal institution other than

the penitentiary for not more than one year or in the penitentiary from one to eight years, and a fine of not more than $15,000.

The provision of the new legislation which is here pertinent is Ill. Rev. Stat. 1971, ch. 56½, sec. 1601, which reads as follows:

"Prosecution for any violation of law occurring prior to the effective date of this Act is not affected or abated by this Act. If the offense being prosecuted would be a violation of this Act, and has not reached the sentencing stage or final adjudication, then for purposes of penalty the penalties under this Act apply if they are less than under the prior law upon which the prosecution was commenced."

Defendant's contention is (1) that the offense being prosecuted herein would be a violation of sec. 1402(b) of the Controlled Substances Act; (2) that the offense being prosecuted herein had not reached the stage of final adjudication as of 16 August 1971 (the effective date of the Act) owing to the pendency of this appeal as of that date; (3) that the penalty under the Act is less than the penalty under the prior law; (4) that, therefore, the penalty under this Act applies; and (5) that resentencing is required either by the modification of the existing sentence by this court under the authority of Supreme Court Rule 615 (Ill. Rev. Stat. 1971, ch. 110A, sec. 615), or by the trial court on a remand with directions to resentence defendant under sec. 1402(b) of the Controlled Substances Act.[1]

In its brief the State agrees with the first four propositions of this contention of defendant, but, as to the fifth proposition, suggests that this court modify the sentence to conform it to the new penalty rather than remand the case to the trial court with appropriate directions.

On the now available authority of *People v. Chupich* (1973), 53 Ill.2d 572, 295 N.E.2d 1, we agree with the parties that the new penalty under sec. 1402(b) has become applicable, because it is less than the penalty under the prior law and because this case had not reached the stage of final adjudication as of 16 August 1971. (See also *People v. Harvey*

---

[1] Defendant suggests that, under the provisions of Ill. Rev. Stat. 1971, ch. 56½, sec. 1410, probation would be an authorized sentence, since defendant is a first offender as to the offense involved in sec. 1402(b); and defendant asks that we grant probation if we decide ourselves to modify the sentence under Supreme Court Rule 615. Not only has it been decided that Rule 615 does not authorize us to reduce a penitentiary sentence to probation (*People ex rel. Ward v. Moran* (June 1973), —— Ill.2d ——, —— N.E.2d ——, (docket No. 45197), but in addition we do not think that sec. 1410 is applicable in the instant case. The section appears to contemplate that the trial court, should it decide to grant probation, will not enter a judgment of conviction, whereas in the instant case the trial court has already entered a judgment of conviction.

(1973), 53 Ill.2d 585, 294 N.E.2d 269.) We will indicate shortly the manner in which we have decided to proceed as to resentencing.

There is a further complication, however, in the instant case which must be dealt with. While this case was still pending on appeal, the Unified Code of Corrections (Ill. Rev. Stat., 1972 Supp., ch. 38, secs. 1001 *et seq.*) became effective on 1 January 1973 (sec. 1008—6—1). By a conforming amendment which became effective on the same date, sec. 1402(b) of the Controlled Substances Act was amended to classify the offense defined therein as a Class 3 felony, and the penalty provisions of that section were deleted, except for the provision that the fine shall not be more than $15,000. Ill. Rev. Stat., 1972 Supp., ch. 56½, sec. 1402(b).

Section 1008—2—4 of the Unified Code of Corrections provides as follows:

> "Prosecution for any violation of law occurring prior to the effective date of this Act is not affected or abated by this Act. If the offense being prosecuted has not reached * * * a final adjudication, then for purposes of sentencing the sentences under this Act apply if they are less than under the prior law upon which the prosecution was commenced."

With respect to a sentence of imprisonment for a felony, sec. 1005—8—1(b)(4) provides that the maximum term for a Class 3 felony shall be "any term in excess of one year and not exceeding 10 years". Sec. 1005—8—1(c)(4) provides that the minimum term for a Class 3 felony shall be "1 year unless the court, having regard to the nature and circumstances of the offense and the history and character of the defendant sets a higher minimum term, which shall not be greater than one-third of the maximum term set in that case by the court". Hence, the sentence of imprisonment authorized by the Unified Code of Corrections for a Class 3 felony is a minimum of one year to a maximum of ten years in the penitentiary with authority to the trial court under the specified conditions to increase the minimum up to one-third of the maximum actually imposed.[2]

Is the sentence of imprisonment authorized under the Unified Code of

---

[2] We are aware that a fine was involved in the penalty prescribed both by the prior law under which the prosecution was commenced (Ill. Rev. Stat. 1969, ch. 38, sec. 22—40) and by the Controlled Substances Act (Ill. Rev. Stat. 1971, ch. 56½, sec. 1402(b)). And we are aware that the Unified Code of Corrections provides for a sentence to pay a fine in addition to a sentence of imprisonment (Ill. Rev. Stat., 1972 Supp., ch. 38, sec. 1005—9—1). We exclude, however, any consideration of a fine because defendant was not in fact fined in his original sentence, and resentence under the Unified Code of Corrections may not be more severe than the prior sentence Ill. Rev. Stat., 1972 Supp., ch. 38, sec. 1005—5—4.

Corrections less than the sentence under the prior law under which the prosecution was commenced? The answer to this question depends upon whether the penalty under the "prior law under which the prosecution was commenced" is to be construed as being Ill. Rev. Stat. 1969, ch. 38, sec. 22—40 or as being that section as amended and supplanted by Ill. Rev. Stat. 1971, ch. 56½, sec. 1402(b), which section was then made applicable to this defendant as to penalty by Ill. Rev. Stat. 1971, ch. 56½, sec. 1601. If the former, then the new authorized sentence under the Unified Code of Corrections is less than under the prior law because the minimum term of imprisonment is one year instead of two years, (even though the trial judge could, under specified circumstances, impose a minimum term of up to three years and four months). But if the latter, then the new authorized sentence under the Unified Code of Corrections is clearly not less than under the prior law.

We think the latter is the correct construction to be placed on the phrase "prior law under which the prosecution was commenced" under the circumstances of this case. Such was the result actually reached in *People v. Chupich, supra,* in which this same problem was involved (though the opinion does not indicate that the problem was brought to the court's attention, which was focused rather upon the meaning of the phrase "final adjudication"). In addition, we think the legislative policy which we discern in the provision of sec. 1008—2—4 of the Unified Code of Corrections (as well as in the provision of sec. 1601 of the Controlled Substances Act) is fulfilled by holding in accord with the result actually reached in *People v. Chupich.*

■■ We hold, therefore, that, as to this defendant, the penalty imposed by sec. 1402(b) of the Controlled Substances Act replaced the penalty imposed by sec. 22—40 of the Uniform Narcotic Drug Act by reason of the provision of sec. 1601 of the Controlled Substances Act (even though defendant herein was not sentenced under the Controlled Substances Act prior to the effective date of the Unified Code of Corrections), and that the sentence of imprisonment "under the prior law upon which the prosecution was commenced" within the meaning of sec. 1008—2—4 of the Unified Code of Corrections is the sentence authorized under sec. 1402(b) of the Controlled Substances Act as made applicable to this defendant by sec. 1601 of that Act.

Finally, we think that the discretion involved in resentencing in this case can better be exercised by the trial court than by this court. We note that the new sentence will be concurrent with the three to nine year sentence imposed on this defendant by reason of his conviction under Indictment No. 71-500.

We affirm the conviction in the instant case, and remand the cause

to the trial court with directions to resentence defendant to a term of imprisonment authorized by sec. 1402(b) of the Controlled Substances Act, with credit toward the new sentence for time served under the vacated sentence.

Affirmed and remanded with directions.

LEIGHTON and SCHWARTZ, JJ., concur.