## STATE v. CAMILO SALDANA.

246 N. W. 2d 37.

September 3, 1976—No. 45962.

C. Paul Jones, State Public Defender, and Rosalie E. Wahl, Assistant State Public Defender, for appellant.

Warren Spannaus, Attorney General, Richard G. Mark, Assistant Solicitor General, Craig H. Forsman, Special Assistant Attorney General, and John F. Corbey, County Attorney, for respondent.

PER CURIAM.

This is an appeal from a judgment of conviction entered pursuant to a jury verdict of aggravated rape, Minn. St. 1974, § 609.291 (2). Defendant principally contends that he was denied the effective assistance of counsel, was prejudiced by the absence of an interpreter at the preliminary hearing, and was entitled under the equal protection clause of the Fourteenth Amendment to the United States Constitution to have his pretrial jail time credited against his sentence. We disagree and accordingly affirm.

Complainant testified at trial that, subsequent to a party celebrating her completion of an examination required to become a registered nurse, she was sexually assaulted and raped shortly after midnight on June 28, 1974, as she undertook, after a quarrel with her boyfriend, to walk the 14 miles along Highway No.

68 to the farm home where she and her boyfriend resided. She testified that, after declining a ride proffered by police officers at about 1 a. m., and when she was about 2 blocks east of County Road No. 117, a man crossed Highway No. 68 and approached her. She first thought this person was her boyfriend, but as he approached she realized he was not. He initiated a conversation with her and indicated that he wanted to have sexual intercourse with her. When she declined, he grabbed her by the arm and forced her into the ditch alongside the road. He then grabbed her by the throat and threatened to kill her if she did not submit. She tried to scream, but the assailant kept choking her harder and she became frightened. Although she attempted to fight her assailant off, an act of sexual intercourse then took place without her consent.

Complainant managed to escape from her assailant after this incident by offering him a cigarette and thereby distracting him. She ran approximately 2 blocks to a dwelling identified in the record as the Nere residence. She awakened the Neres and, although hysterical, told them that she had been raped. Mr. Nere called the police. When the police arrived, complainant described her assailant as a male of either Mexican or Indian descent. He was approximately her height, had dark shoulder-length hair and a missing front tooth, and was wearing a T-shirt and dark pants. He spoke broken English. The police officers, upon hearing the description, immediately departed because on the way to the Nere residence they had passed a man fitting that description who appeared to be changing a tire on his automobile. This person was wearing a T-shirt and dark pants. Prior to their arrival at the Nere residence, they had stopped and inquired as to whether this individual needed some assistance and, after determining that he did not, proceeded to the Nere residence.

After departing from the Nere residence, the police immediately returned to the site of the automobile they had seen earlier and arrested defendant, Camilo Saldana, who was just preparing to drive off, the tire having been changed. During the

time he was being arrested and handcuffed, defendant repeatedly profaned the officers.

After the arrest, the police advised complainant that they had a suspect whom they would like her to view for possible identification. Accompanying the officers to the scene of the arrest, she positively identified defendant as the one who had raped her.

A medical examination of complainant later that morning revealed evidence of recent intercourse as well as mud and dirt on her hands, face, hair, and clothes; both elbows were severely scratched; and the skin of her throat was red and scratched. Following this examination, she led officers to the general area where the alleged rape had occurred. A search of this area revealed a spot where the grass was matted down, a cigarette butt, a comb, a wallet, and a matchbook. The wallet contained three identification cards, two of which had pictures on them. They bore the name Camilo Saldana Chavez or some variation thereof and the pictures appeared to be of defendant.

At the preliminary hearing held July 17, 1974, defendant was represented by Charles Adamson, a public defender appointed to defend him. Officer Loren Wiebold, complainant, and defendant testified at this preliminary hearing. Defendant testified he was on his way to Mankato to get gasoline on the night in question when he had a slight accident which resulted in one of his tires going flat. He recalled that the two deputies had stopped and offered to help, but denied seeing complainant at any time prior to his arrest.

At his arraignment, Mr. Adamson, who had been representing defendant up to this time, withdrew as counsel at the request of defendant. Howard Haugh, another public defense counsel, was appointed to represent him. Defendant pled not guilty. At trial before a 6-person jury, defendant, having waived a 12-person jury, did not take the stand or offer any evidence in his defense. The jury found defendant guilty of aggravated rape upon evidence clearly sufficient to support the verdict.

Defendant is a Mexican national who completed only 4 years

of education in Mexico. The transcript of defendant's testimony at the preliminary hearing reveals that he has a working, if limited, knowledge of the English language. At that hearing, neither the court nor defense counsel inquired whether defendant could understand the testimony of complainant or Officer Wiebold despite defendant's subsequent assertion that he had some difficulty with the English language and desired an interpreter. On this direct appeal from the judgment, defendant now claims that the failure to provide him with an interpreter at the preliminary hearing denied him the full exercise of his rights of confrontation, assistance of counsel, and due process of law. As requested by defense counsel Haugh, an interpreter was present at trial.

The appointment of an interpreter for an accused at trial is a matter resting largely in the discretion of the trial court. Perovich v. United States, 205 U. S. 86, 91, 27 S. Ct. 456, 458, 51 L. ed. 722, 724 (1907). We believe that this same rule should apply to all stages in the criminal process. See, People v. Rivera, 13 Ill. App. 3d 264, 300 N. E. 2d 869 (1973). The test of whether the court abused its discretion is whether the failure to appoint an interpreter hampered the accused in the presentation of his defense. See, Viliborghi v. State, 45 Ariz. 275, 43 P. 2d 210 (1935).

Applying the test to this case is difficult because of the absence of any direct evidence on this issue in the record below. At the preliminary hearing defendant was able, in response to questioning by his counsel, to express a coherent version of the events of the night of the alleged rape. It would thus seem fair to infer that he could adequately express himself to his attorneys without an interpreter. While defendant alludes to several possible instances of prejudice in the preparation of his defense due to the absence of an interpreter before trial, there is no affirmative evidence in this record to raise his claim above that of a mere speculative assertion. Absent sufficient evidence to assess this claim, such as might be developed in a postconviction proceeding, on the record before us we are persuaded that defendant's work-

ing knowledge of English was such that defendant was not prejudiced in the preparation of his case by the absence of an interpreter at the preliminary hearing. See, People v. Estany, 210 Cal. App. 2d 609, 26 Cal. Rptr. 757 (1962).

Defendant seeks to bolster the claimed denial of his constitutional right to the effective assistance of counsel because of the failure to move for an interpreter at the preliminary hearing by claiming the cumulative effect of trial counsel's failure to (1) protect his right to an impartial jury by agreeing to a 6-person instead of a 12-person jury; (2) examine jurors for prejudice properly during voir dire; and (3) investigate adequately the facts of this case. Despite these allegations, which on this record amount to little more than conclusionary assertions, we do not find this case suitable to examine the standards by which effective assistance of counsel should be measured[1] since, by any of the developing standards, we hold defendant was afforded constitutionally adequate counsel.[2]

While no interpreter was present to assist defendant at the preliminary hearing, there is no evidence that defendant did not understand the substance of the testimony by complainant or Officer Wiebold. Nor is there any evidence suggesting that defendant was in any way prejudiced in the preparation or conduct of his defense at trial by the absence of an interpreter at the preliminary hearing.

At the opening of the trial, defendant waived a 12-person jury only after being fully advised by counsel of his right to a jury of 12. While defendant's decision may have been tactically unwise, it was informed and voluntary and one peculiarly within

---

[1] See, State v. Taylor, 305 Minn. 558, 562, note 1, 234 N. W. 2d 586, 589 (1975).

[2] Cf. United States v. DeCoster, 159 App. D. C. 326, 487 F. 2d 1197 (1973); United States ex rel. Williams v. Twomey, 510 F. 2d 634 (7 Cir. 1975); Brown v. Swenson, 487 F. 2d 1236 (8 Cir. 1973); 12 Am. Cr. L. Rev. 193, 197, note 28.

his ultimate control.[3] We find no justification in this record to attribute his present view of this decision to a deficiency of representation. With respect to the voir dire of the jury, there is no affirmative evidence of any bias or prejudice on the part of the jury. See, State v. Russell, 272 Minn. 463, 465, 138 N. W. 2d 690, 692 (1965). Indeed, there is no record of the voir dire itself in the trial transcript, and it is thus impossible to know specifically what questions defense counsel asked of the prospective jurors or in what way his conduct could be called into account.

While trial counsel did not object to the testimony of Officer Wiebold that defendant repeatedly swore at the arresting officers, this failure was totally harmless because defendant's remarks were voluntary, not inculpatory, and plainly admissible.

The last claim of ineffective representation cited by defendant rests on defense counsel's alleged failure to investigate adequately the facts of the case. In his opening statement to the jury immediately following the prosecution's opening statement, counsel, presumably because of his belief that defendant would take the witness chair, stated that defendant would testify that he and complainant did have sexual intercourse, but with her consent. Faced with the virtually irrebuttable physical evidence supporting the prosecution's case in chief, counsel's conduct during the remainder of the trial indicates that he keyed his strategy to what appears from this record to be the only logical defense available to his client, i. e., consent. Cf. State v. Hill, 309 Minn. 206, 224 N. W. 2d 728 (1976). In particular, he sought to establish this defense through vigorous cross-examination of complainant. The fact that it was ultimately rejected by the jury was most likely due to the substantial and persuasive evidence of defendant's guilt and not because of weaknesses in preparation or understanding by defense counsel.

Defendant, indigent and unable to post bail, was incarcerated in county jail from his arrest June 28, 1974, until his conviction

---

[3] A. B. A. Standards for Criminal Justice, The Defense Function (Approved Draft, 1971) § 5.2.

October 16, 1974. His sentence was limited to 5 years of the statutory maximum of 30 years and was ordered to run concurrently with an existing prior 5-year sentence for aggravated assault arising out of a separate incident. The sentencing judge did not expressly allow or refuse to allow credit to defendant for the time he spent in jail before conviction. This, defendant contends, denies him the equal protection of the laws on the basis of his inability to furnish bail.

This case arose prior to the implementation of Rule 27.03, subd. 4(b), Rules of Criminal Procedure, which automatically credits all time spent in custody for which the sentence is imposed, and thus that rule is inapplicable here. Prior to this new rule, Minnesota law did not grant credit for time spent in jail prior to conviction in computing the length of the time remaining to be served. Minn. St. 609.145 (superseded by Rules of Criminal Procedure, Rule 27.03, subd. 4[b]) ; State v. Kotlarek, 279 Minn. 140, 155 N. W. 2d 891 (1968). Defendant argues that this old policy was unconstitutional in view of King v. Wyrick, 516 F. 2d 321 (8 Cir. 1975).

In King, even though the sentence imposed was less than the statutory maximum, the appellate court overturned, on equal protection grounds, a sentencing court's express refusal to allow credit for jail time. Accord, A. B. A. Standards for Criminal Justice, Sentencing Alternatives and Procedures (Approved Draft, 1968) § 5.6 (iii, iv). Here, unlike the King case, there was no such express refusal or any other indication in this record that the sentencing judge refused to take into account defendant's preconviction jail time. Rather the opposite might be argued since the sentence was substantially less than a maximum sentence and was made to run concurrently with a sentence for a prior conviction. In such circumstances, we believe a reviewing court is justified in applying the rule that, if credit could have been given, it is presumed that it was given. See, Stapf v. United States, 125 App. D. C. 100, 367 F. 2d 326 (1966). Cf. Williams v. Illinois, 399 U. S. 235, 90 S. Ct. 2018, 26 L. ed. 2d 586 (1970).

The Court of Appeals for the Eighth Circuit has applied this presumption in several cases, and our application of it in this case requires rejection of defendant's equal-protection argument. See, e. g., Swift v. United States, 436 F. 2d 390 (8 Cir. 1970), certiorari denied, 403 U. S. 920, 91 S. Ct. 2237, 29 L. ed. 2d 698 (1971) ; United States v. Whitfield, 411 F. 2d 545 (8 Cir. 1969) ; Noorlander v. United States, 404 F. 2d 603 (8 Cir. 1968).

We have carefully considered all other alleged errors claimed by defendant and find them to be without merit.

Affirmed.

MR. CHIEF JUSTICE SHERAN took no part in the consideration or decision of this case.