**STATE of Minnesota, Respondent,**

v.

**Gilbert C. PEREZ, Appellant.**

**No. C0–86–1386.**

Court of Appeals of Minnesota.

April 21, 1987.

Review Denied May 20, 1987.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, J. Michael Richardson, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Susan K. Maki, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by FORSBERG, P.J., and RANDALL and STONE,* JJ.

* Acting as judge of the Court of Appeals by ap-

## OPINION

RANDALL, Judge.

Appellant, a 22 year old Hispanic male, was arrested for the rape and robbery of 79 year old A.O. He was charged with one count of aggravated robbery, Minn.Stat. § 609.245 (1984); one count of first degree assault, Minn.Stat. § 609.221 (1984); and one count of first degree criminal sexual conduct, Minn.Stat. § 609.342, subd. 1(e)(i) (Supp.1985). At the omnibus hearing, the judge denied appellant's motion to suppress all statements made during custodial interrogation. The judge also denied appellant's motion for a simultaneous Spanish translation during trial.

A jury found appellant guilty of each charge. The judge denied appellant's motion for a new trial, and imposed concurrent sentences of 24 months for the aggravated robbery conviction, based on a criminal history score of 0, and 162 months for the first degree criminal sexual conduct conviction, an upward departure and based on a criminal history score of 1. The court denied appellant's Rule 27 motion for correction of his sentence.

## FACTS

At 3:30 p.m. on February 2, 1986, appellant assaulted and robbed 79 year old A.O. as she walked from the Greyhound Bus Depot in Minneapolis to look for a hotel. A short distance from the depot, near the YMCA, appellant grabbed A.O. by the neck, knocked her to the ground, and dragged her into an alley. As A.O. sat in the snow, appellant forcibly removed her ring, her watch, and a gold necklace. He then raised her skirt, lowered her underwear, and forced her legs apart. As he lay on top of her, A.O. felt her hip break. At trial, A.O. testified appellant penetrated her "a little bit." A.O. offered appellant her purse if he would leave her alone. He grabbed her purse and tote bag and ran.

Joseph Smith and Robert Salburg witnessed the assault from the YMCA sidewalk. At first the two did not know they were witnessing a rape and robbery. But

pointment pursuant to Minn. Const. art. 6, § 2.

when appellant stood up Smith realized appellant's pants were lowered and his penis exposed. Smith watched appellant get dressed and take A.O.'s purse and tote bag. Smith ran to the parking lot where he found A.O. naked from the waist down. Smith ran after appellant and Salburg joined him in the chase. Smith cornered appellant in the Amfac hotel garage. The hotel security staff locked appellant in the security office and called the police. The security staff recovered A.O.'s purse in the garage.

Two police officers located A.O., still sitting in the snow and in shock. She was taken by ambulance to Hennepin County Medical Center where Dr. Paugh performed a sexual assault examination. Because of her hip fracture, a speculum examination could not be performed. Dr. Paugh performed a digital examination. Standard sexual assault samples were taken.

The following day, Dr. Speece performed a speculum examination and took additional samples. He testified A.O. exhibited vaginal injury consistent with penetration. A.O. sustained a comminuted hip fracture, requiring surgery to place a pin in her hip.

After his arrest, police took appellant to Hennepin County Medical Center for treatment of injuries he sustained when Smith apprehended him. A blood test showed his blood alcohol level to be .22. In the hospital, appellant was held in a locked observation room. Dr. Beggs observed that while he was with appellant, appellant appeared obtundent, or "out of it." However, Dr. Beggs testified that when he left the room and observed appellant on a television monitor, he saw appellant get out of bed and move around the room "purposefully."

A.O.'s watch, ring, and necklace were recovered from appellant during a search following his arrest. On February 3, 1986, Officer Kubera gave appellant the *Miranda* warning and took a taped statement. Appellant admitted the robbery but denied committing the rape. He claimed he was intoxicated with alcohol and marijuana, and stated his penis was exposed because he was attempting to urinate.

At the omnibus hearing, the court initially appointed Luis Borges to provide a simultaneous interpretation for appellant at trial. However, the court determined, after hearing the taped confession and appellant's testimony, that appellant possessed sufficient knowledge of English that simultaneous interpretation was not required, and it appointed an interpreter to be present in the courtroom to assist appellant.

A Bureau of Criminal Apprehension (BCA) analyst testified that semen was found on A.O.'s underwear and a very small amount of semen present in the vaginal swab taken February 2. He also testified that none of appellant's hairs were found in the combing, but stated that no conclusions can be drawn from this. Dr. Peterson, a Hennepin County Medical Center pathologist, conducted tests on different samples and found no semen. He testified that sometimes one swab picks up all the traces of seminal fluid, leaving another sample negative.

Appellant did not testify at trial and he called no witnesses. The court permitted him to argue an intoxication defense at trial, and the court gave the jury an instruction on the intoxication defense. The jury found appellant guilty as charged. The court sentenced appellant to concurrent sentences totalling 162 months, based on *State v. Hernandez*, 311 N.W.2d 478 (Minn.1981), for aggravated robbery, Minn. Stat. § 609.245 (1984), and first degree criminal sexual conduct, Minn.Stat. § 609.-342, subd. 1(e)(i) (Supp.1985).

## ISSUES

1. Did the trial court err by denying appellant's motion for a simultaneous translation at trial?

2. Did the trial court err by refusing to suppress appellant's statements made while in custody?

3. Was the evidence sufficient to sustain appellant's convictions for both first degree criminal sexual conduct and a separate count of aggravated robbery?

4. Does the imposition of multiple sentences violate Minn.Stat. § 609.035?

5. Did the trial court improperly depart upward when sentencing appellant for first degree criminal sexual conduct?

## ANALYSIS

### I.

**Interpreter Issue**

■ Minn.Stat. § 611.30 (1984) provides, in part:

It is hereby declared to be the policy of this state that the constitutional rights of persons handicapped in communication cannot be fully protected unless qualified interpreters are available to assist them in legal proceedings.

A person "handicapped in communication" is one who:

because of difficulty in speaking or comprehending the English language, cannot fully understand the proceedings or any charges made against him, or is incapable of presenting or assisting in the presentation of his defense.

Minn.Stat. § 611.31 (1984); *see also State v. Saldana*, 310 Minn. 249, 252, 246 N.W.2d 37, 39 (1976). The trial court has discretion to decide whether an interpreter should be appointed at trial. *Id.*

The test of whether the court abused its discretion is whether the failure to appoint an interpreter hampered the accused in the presentation of his defense.

*Id.*[1] Appellant argues he is "handicapped in communication," and claims he was prejudiced because he could not understand the testimony of the State's six expert witnesses at trial.

While he did not testify at trial, appellant did testify at the omnibus hearing. Based on testimony given at the omnibus hearing,

the court determined appellant had a sufficient command of the English language to assist in his defense. Appellant does not argue that he could not assist in preparing his defense. Minn.Stat. § 611.31. Rather, he claims he was unable to understand expert testimony presented at trial. The record does not indicate whether he made use of the translator provided by the court.

■ We have reviewed the transcript, and agree with the trial court's finding that appellant possessed sufficient command of English to assist in the presentation of his defense. The trial court's finding is a proper basis for its conclusion that appellant did not need simultaneous translation.

In *Saldana*, the supreme court was faced with a similar situation. The court there determined the appellant was able to adequately express himself to his attorneys without an interpreter. *Saldana*, 310 Minn. at 252, 246 N.W.2d at 39. Here, as in *Saldana*, appellant has pointed to no instance of prejudice in the preparation of his defense. *Id.* He has given this court no affirmative evidence from the record to raise his claim above mere speculation. *Id.* This case is similar to *State v. Vu*, 339 N.W.2d 892 (Minn.1983). In *Vu*, appellant had some difficulty understanding English but gave extensive testimony at his hearing. His testimony filled over 45 pages of transcript. *Id.* at 897. Testimony showed he had little difficulty with English at work or at home, but only that his comprehension decreased as trial approached. *Id.* at 898.

■ Minn.Stat. § 611.30 does not require simultaneous translation. Rather, it provides that as a matter of policy, qualified interpreters must be "available to assist" persons handicapped in communication. The trial court did not abuse its discretion by not providing for a simultaneous trans-

1. Appellant cites *State v. Mitjans*, 394 N.W.2d 221 (Minn.Ct.App.1986), *pet. for rev. granted* (Minn. Dec. 12, 1986) to support his constitutional argument. *Mitjans* is distinguishable because the factual setting of this case and the arguments for and against appellant's position arise in a different posture than the constitutional argument in *Mitjans*. Here the trial court made a translator available during trial as need-

ed. The court made a specific finding that appellant could understand and communicate in English, and on appeal we affirm that finding. Such a finding not only was not present in *Mitjans*, but in *Mitjans* both sides conceded that a translator was needed. The question in *Mitjans* was not whether there should be a translator, but whether the translator gave an accurate account and was timely sworn.

lation. Appellant demonstrated sufficient command of the English language to answer all questions put to him at the omnibus hearing. The trial court fulfilled its obligation under the statute by making a translator available at trial.

## II.

### Admissibility of Taped Statements

Minn.Stat. § 611.32, subd. 2 (1984) provides that, following the arrest of a person handicapped in communication, the arresting officer "shall immediately make necessary contacts to obtain a qualified interpreter * * * at the earliest possible time at the place of detention."

■■■ Appellant argues the officers were on notice that he was "handicapped in communication" by the fact that he was Hispanic. He argues that because he is "handicapped in communication" he did not make a knowing, intelligent waiver of his *Miranda* rights. The mere fact that a suspect is Hispanic—or any other nationality—is not, without more, sufficient to put peace officers on notice that the suspect is handicapped in communication. At the omnibus hearing, both the arresting officer, McKelvey, and Officer Kubera, who took appellant's statement, testified that appellant did not indicate in any way that he could not understand English, nor did he ask for a translator. Both officers read him his *Miranda* rights, and he indicated to both that he understood his rights. The officer testified appellant responded appropriately to questions and commands and that they had no reason to believe he did not understand them.

The supreme court noted in *State v. Vu:*
The rule in Minnesota is that the state has carried its burden of proof if it shows that the warning was given and defendant stated that he understood his rights. However, if there is other credible evidence indicating that the waiver was not "knowing and intelligent," the state must produce additional evidence and the trial court must make a subjective factual inquiry to determine, on the basis of all the circumstances, whether the waiver was effective.

*Vu,* 339 N.W.2d at 897–98.

Appellant presented no other credible evidence that his waiver was not knowing and intelligent. Based on all of the circumstances, we hold his waiver of *Miranda* rights was effective.

## III.

### Sufficiency of Evidence

Appellant argues the evidence was insufficient to prove penetration, great bodily harm for conviction of aggravated robbery, and intent.

### Penetration

■■■ Penetration is an element necessary for a conviction of first degree criminal sexual conduct. Minn.Stat. § 609.342, subd. 1 (Supp.1985). A verdict can be based on the testimony of a single witness, no matter what the issue. *State v. Burch,* 284 Minn. 300, 313, 170 N.W.2d .543, 552 (1969). Corroboration of the victim's testimony in a prosecution for criminal sexual conduct is not required. Minn.Stat. § 609.-347, subd. 1 (1984). A.O testified that appellant penetrated her. Appellant claims this is an equivocal response, insufficient to prove penetration. On cross-examination A.O. testified that she may have told Officer Kubera appellant did not penetrate her. Officer Kallenbach, one of the two officers who found A.O. in the snow after the assault, testified that appellant "tried to have sex with her."

■■■ The vaginal swab sample sent to the BCA for analysis indicated semen in A.O.'s vagina. The amount of semen present was small, according to Wallace Sorum of the BCA. Semen was also discovered on her panties. A.O. testified that she had not had intercourse in 30 years. Dr. Garry Peterson, a pathologist at Hennepin County Medical Center, testified that it is possible under a variety of circumstances to have only a small amount of semen present following intercourse. A.O.'s testimony and the additional evidence support the jury's finding of penetration.

### Bodily Harm

Bodily harm is an element necessary to support a conviction for aggravated robbery. Minn.Stat. § 609.245 (1984). Appellant claims the evidence is insufficient to convict him of aggravated robbery. He claims that since the trial court considered the robbery and the sexual assault as separate behavioral incidents for sentencing purposes, it could consider A.O.'s hip injury only in the rape conviction, not to enhance his simple robbery to aggravated robbery. Appellant's position is that there was only one behavorial incident.

Appellant cites *State v. Murphy*, 380 N.W.2d 766 (Minn.1986) in which the supreme court held that the defendant's killing the victim after raping her was one continuous act. The case is not relevant here, since it is an interpretation of the felony murder statute:

> In this case, defendant killed Cole immediately following the rape to conceal his crime. This killing falls within the same continuous criminal act as the rape and thus falls within the scope of our felony-murder statute.

*Id.* at 771.

We agree with the trial court that the sexual assault and the aggravated robbery were separate incidents, and we conclude from the record, as appellant argues, that the bulk of A.O.'s injuries were suffered during the sexual assault. However, extensive bodily injury, such as A.O.'s hip injury, is not needed to support an aggravated robbery conviction. Bodily harm is any "physical pain or injury, illness, or any impairment of physical condition." Minn. Stat. § 609.02, subd. 7 (1984); *State v. Johnson*, 277 Minn. 230, 237, 152 N.W.2d 768, 773 (1967), *cert. denied* 390 U.S. 990, 88 S.Ct. 1190, 20 L.Ed.2d 1297 (1968). The supreme court, in *Johnson*, held that evidence the victim experienced pain from being struck and shoved in and out of his car by defendant was sufficient to constitute bodily harm for a conviction of aggravated robbery. *Id.*

■ A.O. sustained some pain and injury separate from the injury to her hip suffered during the sexual assault. The pain and injury inflicted by appellant when he knocked 79 year old A.O. to the ground and, preparatory to robbing her jewelry, dragged her several feet into the alley is sufficient to support the jury's conviction for aggravated robbery. Pursuant to *State v. Johnson*, we find that the bodily harm element of aggravated robbery was satisfied by the physical acts appellant inflicted on A.O. when he knocked her to the ground and dragged her into an alley. It is not disputed that these acts took place prior to the sexual assault and resulting damage to her hip.

### Intoxication

■ Appellant bore the burden of proving that his intoxication rendered him incapable of forming intent. *State v. Wahlberg*, 296 N.W.2d 408, 418 (Minn.1980). Although appellant did not testify or present any witnesses the court allowed him to argue an intoxication defense to the jury and gave an instruction on intoxication. Appellant argues that undisputed evidence showed his blood alcohol level was .22 at the time of his arrest, and that this high blood alcohol level rendered him incapable of forming intent. He also claims he used marijuana on the day of the offense.

It is apparent the jury believed the State's witnesses who testified that appellant was not too intoxicated to act purposefully. Dr. Beggs testified that a person who has built up a tolerance to alcohol can function at a normal level even with .22 blood alcohol, and that mental and visual perceptions in such cases are not always impaired.

Officer McKelvey testified that when he took appellant into custody, he observed a slight odor of alcohol, but noticed no slurred speech, bloodshot eyes, or other indications of intoxication. McKelvey observed appellant through a glass wall while appellant was in the emergency room. Prior to being carried into the security room, appellant appeared to faint. However, McKelvey testified that once appellant was alone in the room, he got off the bed and tried to work the lock on the door.

This testimony was corroborated by Dr. Beggs, who observed appellant in the security room through a television monitor. He testified that when appellant was alone in the room, he got up and moved about the room without difficulty on three separate occasions, and returned to the bed when Dr. Beggs reentered the room. When Dr. Beggs questioned appellant in the room, appellant was unresponsive. He could not, therefore, testify to whether appellant was disoriented as to where he was. Dr. Beggs testified that it was his opinion, based on his observation of appellant, that appellant could act purposefully.

The evidence is sufficient to support the jury's conclusion that appellant's acts were intentional.

### IV.

#### Sentencing

Appellant argues that sentencing him for aggravated robbery and first degree criminal sexual conduct was improper because the crimes were committed during a single behavioral incident under Minn.Stat. § 609.-035 (1984). *See State v. Shevchuck,* 282 Minn. 182, 186, 163 N.W.2d 772, 775–6 (1968). The court sentenced him to concurrent terms, totalling 162 months, on the two convictions. He argues that the robbery and rape are not separate crimes because A.O. was injured during the rape and the rape was part of the robbery.

In *State v. Southard,* 360 N.W.2d 376 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. April 12, 1985), this court affirmed sentencing for two crimes, first degree criminal sexual conduct and robbery. This court stated:

In deciding whether two or more intentional crimes were part of the same course of conduct, one must focus on the factors of time and place and also consider whether the segments of conduct involved were motivated by an effort to obtain a single criminal objective.

*Southard,* 360 N.W.2d at 384, quoting *State v. Banks,* 331 N.W.2d 491, 493 (Minn. 1983). The court in *Southard* found the rape and robbery were motivated by the desire to obtain two criminal objectives, and that imposition of two sentences was appropriate. *Id.*

This case comes close to a single behavioral incident. The facts involved in the aggravated robbery and those in the sexual assault are intertwined. However, we hold the trial court properly found appellant was motivated by two separate criminal objectives, and we note that the acts necessary to complete the aggravated robbery were done before the sexual assault. Although close in time and place, the trial court was not clearly erroneous in finding that the robbery and the assault were distinct criminal acts.

### V.

#### Upward Departure, Criminal History Score

Appellant argues that tripling the presumptive sentence for first degree criminal sexual conduct was not justified and unfairly exaggerates his culpability. We hold the facts are compelling enough that tripling the presumptive sentence is proper under *State v. Mesich,* 396 N.W.2d 46 (Minn.Ct.App.1986), *pet. for rev. denied,* (Minn. Jan. 2, 1987, Jan. 21, 1987); *see State v. Evans,* 311 N.W.2d 481, 483 (Minn. 1981) (generally the upper limit is double the presumptive sentence length, except where the facts are unusually compelling).

Appellant argues the court erred by sentencing him first on the robbery, based on his criminal history score of zero, and then sentencing him for first degree criminal sexual conduct based on a criminal history score of one. He argues that under *State v. Hernandez,* 311 N.W.2d 478 (Minn.1981), he should have been sentenced on the criminal sexual conduct conviction (the more serious) first, and the robbery conviction second.

The trial court properly sentenced appellant. Under the Minnesota Sentencing Guidelines and Commentary II.B.101, when multiple concurrent offenses are sentenced on the same day, before the same judge, sentencing shall be in the order the offenses occurred. Here the robbery oc-

curred before the rape, and the court correctly sentenced appellant in that order.

### DECISION

The trial court did not err by admitting appellant's pretrial statements, or by refusing to order a simultaneous translation at trial. Appellant's rights were protected by appointment of a translator to assist him at trial. The evidence is sufficient to support appellant's conviction for first degree criminal sexual conduct and aggravated robbery. Appellant's sentences were properly imposed.

Affirmed.